[No. 3,268.]

T. L. M. CHIPLEY AND HENRY F. BAKER *v.* WILLIAM F. FARRIS, G. B. FARRIS, AND JAMES CORWIN.

ISSUING A PATENT TO A DECEASED PERSON.—If the patentee to whom a patent is made, under the Act of March 3d, 1851, to settle private land claims in California, dies before the patent is issued, the title to the lands therein designated becomes vested in the heirs, devisees, or assignees of the deceased patentee, the same as if the patent had issued during his life.

Points decided.

PATENT FOR MEXICAN GRANT.—A patent of a Mexican grant of land is not issued without authority of law, because the Surveyor General of California transmits to the General Land Office the plat and survey of the land certified and approved by him, instead of having the transmission made by the confirmee.

WHAT GIVES PERFECT TITLE TO INCHOATE MEXICAN GRANT.—The claimant of a Mexican grant, whose title is not perfect, and for that reason requires confirmation, does not acquire a perfect title except by means of a patent, or a survey confirmed in accordance with the Act of June 14th, 1860.

PATENT CANNOT BE ATTACKED COLLATERALLY.—A patent for a Mexican grant of land is a record which binds both the Government and the claimant, and those deriving title through him, and cannot be attacked by either party, except by direct proceedings instituted for that purpose.

EVIDENCE TO SHOW PATENT VOID.—Neither the claimant of a Mexican grant, nor those claiming title through him, can introduce evidence, in an action brought by them to recover possession of the grant, or a portion thereof, to show that the patent issued therefor was void.

DELIVERY AND ACCEPTANCE OF PATENT.—It is not necessary that a patent, issued for a Mexican grant, under the Act of 1851, for the settlement of private land claims in California, should be accepted by or delivered to the claimant or patentee. The patent takes effect when issued.

APPROVED SURVEY OF MEXICAN GRANT.—If the patent purports to convey the land described in the approved survey of a Mexican grant, and the decree of confirmation comprises a greater area than the approved survey, the claimant has no title except to the land described in the approved survey.

CONFIRMATION AND APPROVED SURVEY.—If the decree of confirmation of a Mexican grant does not accord in its description of the land with the approved survey, and the patent conveys the land as described in the approved survey, the claimant's title is confined to the land as described in the approved survey, even if the decree of confirmation is inserted in the patent.

IDEM.—If the decree of confirmation covers land not included in the approved survey, and not conveyed by the patent, the claimant has no title to the surplus which is not conveyed by the patent.

IDEM.—The boundaries mentioned in the approved survey must prevail over those mentioned in the decree of confirmation.

PATENT TO SPANISH OR MEXICAN GRANT.—When the plaintiffs, in ejectment, rely for title on a Spanish or Mexican grant, and prove a confirmation of the same under the Act of 1851, for the settlement of private land claims in California, and it appears that a patent has been issued for the same, the plaintiffs must, if requested, produce the patent in evidence, or their testimony will be stricken out.

IDEM.—The issuance of the patent is the last step in the proceeding for the confirmation of a Spanish or Mexican grant, under the Act of Congress of 1851.

APPEAL from the District Court of the Seventeenth Judicial District, Los Angeles County.

By consent of parties, the case was referred to a referee, to try all the issues and report the testimony, his findings of fact, and a judgment.

Among other witnesses, one Stephen C. Foster was introduced by the plaintiffs, and, while under cross-examination, said that he had seen the patent issued for this grant in Mr. Abel Stearns' possession.

The plaintiff moved to strike out the statement of the witness, on the ground that the patent itself was the best evidence of its existence and contents. But the referee refused to grant the motion, and the plaintiff excepted. The witness, Foster, then stated that "he could not say positively that it was a patent which he saw in Stearns' possession. It purported to be so; but witness did not know the signatures attached to it. It was dated about 1866; the name of Andrew Johnson, President of the United States, was written to it; it had a seal which purported to be the seal of the United States, and it described the land in this grant to Antonio Maria Lugo."

The plaintiffs then renewed their motion on the ground specified, and on the further ground that it did not appear there was a patent. But the referee overruled the motion, and the plaintiffs excepted.

The referee then, on motion of the defendants, ruled that in the opinion of the referee a patent to the land had been issued, and that the same was the best evidence as to the boundaries of the rancho, and that evidence already given by plaintiffs as to those boundaries would be stricken out unless

the patent was produced by plaintiffs. To which ruling of the referee the plaintiffs excepted.

The plaintiffs' counsel then took the patent from Mr. Abel Stearns, then in Court as a witness, and proved by Mr. Foster that it was the document referred to by him; and then offered the same to the counsel for the defendants, to be by them offered in evidence, if they wished it, which offer was declined by them.

Plaintiffs' counsel renewed their motion to strike out Mr. Foster's statement as to the existence of a patent for the San Antonio Rancho, on the ground that no evidence of the contents of a writing, other than the writing itself, can be given except in the cases specified in section four hundred and forty-seven of the Practice Act. The referee overruled the motion, and plaintiffs excepted.

The plaintiffs then offered to prove that neither Antonio Maria Lugo nor any of his successors in interest ever made any application to the United States authorities for the survey of the Rancho San Antonio, or for the issuance of a patent therefor; also that the survey referred to in the said patent, was made under the directions of the Surveyor General of his own motion; that said survey, with the certificate referred to in the so-called patent, was forwarded to the General Land Office at Washington, by the United States Surveyor General, of his own motion, and that the said so-called patent was executed by the officials whose names are attached to it, of their own motion, and was by them forwarded, of their own motion, to the United States Surveyor General for California; that the witness, who is the owner of a segregated portion of said rancho (ten thousand acres out of twenty-nine thousand five hundred) outside of the green lines on Exhibit "17," was notified by the Surveyor General that the patent was in his office, and thereupon took a receipt for the same; that none of the other owners of land in the

rancho have ever accepted the said patent, or in any way acquiesced in the same.

To the introduction of which evidence the defendants objected on the grounds:

First—That the plaintiffs had already introduced evidence showing that their predecessors in interest had made application to the Land Commission for the ratification of the Mexican grant, for the land embraced in the patent.

Second—Because the issuance of a patent presupposes conclusively that every requisite to its issuance was complied with.

Third—No application for the issuing of the patent was necessary.

Fourth—That until the patent is set aside by proceedings for that purpose, by the United States Government, it is conclusive as to all parties, and cannot be attacked collaterally.

The referee thereupon sustained the objections of the defendants, and excluded the evidence, and the plaintiffs thereupon excepted.

The defendants recovered judgment, and the plaintiffs appealed.

The other facts are stated in the opinion.

*Glassell, Chapman & Smith,* for Appellants.

The referee erred in refusing to admit the evidence offered by the plaintiffs. This evidence would clearly have established the invalidity of the patent. Under the Act of March 3d, 1851 (Sec. 13), a patent could only be issued upon the application of the claimant. By section fifteen, the final decree of confirmation was placed upon the same footing as a patent, and made equally conclusive. A confirmee, therefore, who was satisfied with his decree of confirmation, could not have a patent forced upon him. In this case the patent purports to have been issued under the provisions of the Act of June 14th, 1860, which, however, was not retrospective in

its operation, and therefore did not apply to Lugo's survey, which was approved in 1859. (*U..S.* v. *Sepulveda,* 1 Wall. 107.)

Some act of acceptance on the part of the claimant would in any case be necessary to the validity of a patent. The Government cannot even give land to a man unless he is willing to take it, much less can it, under the insidious pretense of giving, take away from him that which he already has. It is true, that at common law the King's grant was good without delivery. But this was founded on the presumption (which we suppose could have been rebutted), that the grantee was willing to take.

The patent was also void, because issued to a dead man. (*Schedda* v. *Lawyer,* 4 McLean, 181; *Hogan* v. *Page,* 2 Wall. 605; *McDonald's Heirs* v. *Smalley,* 6 Peters, 261; Act of May 20th, 1836; 4 Shars. Laws of U. S., 2436; *Waterman* v. *Smith,* 13 Cal. 419, 420.)

The Act referred to provides that "where patents for public lands" have been or shall be issued to a dead man "the title to the land designated therein shall inure to and become vested in" his heirs, etc. In *Waterman* v. *Smith,* the Court held that the term "public lands" includes Mexican land claims for a specific quantity of land within designated boundaries containing a larger quantity—the United States, in such cases, being part owners of the land. The term cannot, however, with any degree of propriety, be extended to private land confirmed by specific boundaries. In such lands, the United States have no interest whatever. It is to be observed, also, that the Act cited was intended for benefit of heirs, etc., and that it does not give to such patents any validity, except to vest the title in such heirs. It would be a harsh construction of the Act, neither warranted by its language or spirit, to extend its operation so as to deprive the heirs of land already vested in them.

Whether the patent is valid or otherwise, the referee

erred in compelling us to offer it in evidence, for the reasons stated in our exceptions.

Under the Mexican Government, all that remained to give Lugo a perfect title was the approval of the Departmental Assembly. The decree of confirmation was equivalent to such approval, and the title of Lugo, therefore, by the confirmation, became a perfect title in fee simple. Such a title could not be divested by the subsequent issuing of a patent, without any application therefor, and after the death of the claimant. (Act of 1851, Sec. 13; *Moore* v. *Williamson*, 13 Cal. 487; *Waterman* v. *Smith*, 13 Cal. 412, 413, 415; see also id. 574; *Natoma Water Co.* v. *Clarkin*, 14 Cal. 544; *Mahoney* v. *Van Winkle*, 21 Cal. 552; *Soto* v. *Kroder*, 19 Cal. 87; *Mahoney* v. *Van Winkle*, 33 Cal. 456; *Ward* v. *Mulford*, 32 Cal. 365; *O'Connell* v. *Dougherty*, id. 458; *Rose* v. *Davis*, 11 Cal. 133; *Stanford* v. *Taylor*, 18 How. 412; *U. S.* v. *Halleck*, 1 Wall. 439; *Minturn* v. *Brower*, 24 Cal.)

The solemn treaty obligations of the Government required that the survey should be made in conformity with that decree; the law required that it should be so made; it was the sworn duty of the Surveyor General so to make it. It is a case of latent ambiguity, not appearing on the face of the patent, but developed by the evidence. (Broom's Maxims, 584.) The question then arises, which is to be rejected, the decree or the repugnant calls recited in the patent? There can be but one answer to this: the plighted honor of the Government, and the oath of office of the Surveyor General, pronounce in favor of the decree; all assure us that it was the intention of the patent to convey the land described in the decree; and that the survey was referred to only because it was believed to be in conformity to the decree; and they further establish that the change in the original survey was inadvertently made, and not with deliberate intention to alter the lines established by the decree. (Broom's Legal Maxims, 383, 468; Wash. Real Prop. 347, 350; 4 Mass. 196;

11 Mass. 167; Com. Dig. "Paroles A, 23;" 36 Maine, 316; 28 N. H. 492, 501; 3 Green, 393; 1 Rich., S. C. 140; 22 Maine, 355; 3 Pick. 278; 6 Cranch, 237; *Stukeley* v. *Butler*, Hobart's R. 1; 33 Maine, 208; 12 N. Y. 129; Dev. 46; 2 Clark & Finn, 22, 36; 1 Mass. Dig. 287, n. 290.)

Upon the grounds stated under the foregoing point (yielding, for the sake of the argument, only, the conclusion there arrived at), the calls of the decree are at least of equal dignity with those of the survey recited. A call for mere course and distance in the latter must, therefore, yield to a call for natural objects in the former, and vice versa. To apply this principle to the present case, the last course recited in the survey must deviate from a straight line and pass through the elder tree at the point called Las Viejas, and the sycamore tree; that is, the true line, instead of being the straight blue line on Exhibit "No. 19," is the red broken line. It is true that a course given from corner to corner is prima facie a straight line, yet this may be explained by other matters in a case to be a crooked line. (*Baker* v. *Talbot*, 6 Monroe, 182; 1 U. S. Dig. 474, n. 8; Mass. Dig., Title "Boundary;" 3 Wash. R. P. 252; *Davis* v. *Sherman*, 7 Gray, 291.)

*J. S. Slauson*, for Respondents.

The proceedings of the plaintiffs in this action indicate a belief, on their part, that proceedings had upon a Mexican grant, culminating in the issuance of a patent by the United States Government, determine nothing, and is but the starting point of litigation, and that claimants under a Mexican grant are the absolute unqualified owners and possessors of the land they may deem covered by the grant, even though its boundaries and validity may not in anywise have been determined by the Government of the United States, and that any change of boundary or diminution of quantity from what the grant holder claimed, is an usurpation on the part of the Government.

The defendants believe that the patent is conclusive upon all points in this case, and is an end of all questions of lines and boundaries, and upon the rights of all parties affected by it, in this simple action of ejectment, where no errors, mistakes, or frauds are in issue, and no corrections or reformations are sought; and that the claimants under a Mexican grant have no absolute fee or title to a particle of the land claimed by the grant as against the Government of the United States, until an adjudication had by the Government, and an establishment of lines and boundaries.

The law of March 3d, 1851, was subject to all future laws and amendments thereof by the United States, and all subsequent Acts and amendments are to be deemed a part of the same, and to be construed together. (Opinions of Attorney General, 44.)

The issuance of the patent presupposes conclusively that if an application for its issuing was necessary, that such application was made which might well have been done verbally by the appellant or his attorney. (*Leese* v. *Clark*, 18 Cal. 535; *Mott* v. *Smith*, 16 Cal. 53; *Biddle Boggs* v. *Merced Co.*, 14 Cal. 360; *Yount* v. *Howell*, 14 Cal. 466.)

If death of any one applicant delays the issuing of the patent, then the whole land system, in that case, must be blocked until the Government ascertains judicially whether the parties are living or dead—a labor which it is believed the Government has not yet imposed upon itself. The patent, however, takes effect from the date of Lugo's filing his petition, at which time he was alive. (10 Howard, 373.)

The patent was the best evidence, and plaintiffs' own testimony having declared its existence, the referee very properly directed its introduction in evidence.

The approval of the Departmental Assembly not having been made, the claimant, Lugo, was compelled, by Act of March 3d, 1851, to present his claim, and did so present it, and thereafter all his rights became subject to that law and

laws thereafter passed, and he, by the presentation of his claim, became an actor under those laws, and bound by his own or his attorney's acts or defaults. His application resulted in the issuance by the Government of the patent in evidence, and he is and must be bound by it in all its results in this action.

The boundary lines are where the Government locates them. The Deputy Surveyor was only the "eyes of the Surveyor General," and his acts are not binding only as approved by the Government, and when approved the survey is conclusive. (*Mott* v. *Smith,* 16 Cal. 548; *U. S.* v. *Sepulveda,* 1 Wall. 104; *Moore* v. *Wilkinson,* 13 Cal. 478; *Waterman* v. *Smith,* 13 Cal. 416.)

The Surveyor General did so make his survey, and did make his "solemn certificate" that he correctly made the survey, which certificate cannot be contradicted by assertions of plaintiffs' attorneys, or parol evidence which they attempted to offer.

No competent evidence of mistake or inadvertence was offered, and the action is simply an action of ejectment, and not an action to reform an error or mistake in a conveyance or in the patent. (*Biddle Boggs* v. *Merced Co.,* 14 Cal. 279; *Waterman* v. *Smith,* 13 Cal. 411.)


By the Court, RHODES, J.:

The claim of A. M. Lugo to the Rancho de San Antonio was finally confirmed, and the description of the land confirmed, as given in the decree of confirmation, accords substantially with that of the juridical possession. In the patent issued to the confirmee, the lines of the rancho on the western side, as described in the field notes, and the plat, do not coincide with those mentioned in the decree of confirmation, but exclude a portion of the land included in the latter. The land in controversy is a portion of the land thus ex-

cluded. The plaintiffs claim title under a son of A. M. Lugo, who had received a conveyance from his father after the confirmation, but before the issuing of the patent. The patent was issued after the death of A. M. Lugo, and was delivered to a person who was the owner of a specific parcel of the rancho; but it does not appear that any of the parties under whom the plaintiffs claim made an application for the issuing of the patent. The plaintiffs rely mainly upon the decree of confirmation, and attack the patent on several grounds.

They contend that it is void because it was issued after the death of the patentee. It was held in *Waterman* v. *Smith*, 13 Cal. 419, that the Act of Congress of May 20th, 1836, which provided "that in all cases where patents for public lands have been or may hereafter be issued in pursuance of any law of the United States, to a person who had died, or who shall hereafter die, before the date of such patent, the title to the land designated therein shall inure to, and become vested in, the heirs, devisees, or assignees of such deceased patentee, as if the patent had issued to the deceased person during life" was applicable to a patent issued under the Act of March 3d, 1851—the Act to ascertain and settle the private land claims in the State of California. The decision on that point has remained unquestioned up to the present time, and we have entire confidence in its correctness.

It is also contended that the patent is void, because the proceedings in respect to the survey were had under the Act of June 14th, 1860. The survey in the field was made prior to the passage of that Act, and there is nothing on the face of the patent, nor in any portion of the record before us, which goes to show that the proceedings were not properly had under that Act.

CAL. REPS. XLV—68

It is also contended that, as the thirteenth section of the Act of 1851 provides that "a patent shall issue to the claimant upon his presenting to the General Land Office an authentic certificate of such confirmation, and a plat or survey of the land, duly certified and approved by the Surveyor General of California," the patent must be held to have been issued without authority of law, if such survey and plat were transmitted to the General Land Office by the Surveyor General. It is manifest that the purpose of that provision was to require the survey and plat to be filed in the General Land Office, in order that the patent might be prepared and issued by the proper officers. The transmission of those documents by the Surveyor General, accomplishes that purpose as fully as their presentation by the claimant.

It is further contended that the confirmation of the claim gave the claimant a perfect title, and that he could not be divested of his title to any of the lands, by a patent which excluded a portion of the rancho. The claimant did not have a perfect title when he presented his petition for confirmation, for the reason, among others, that the grant had not received the approval of the Departmental Assembly; and as it was requisite for the claimant to present his claim for confirmation, as provided for in the Act of 1851, he could not acquire, under the law then or subsequently in force, a perfect title, except by means of a patent, or a survey confirmed in accordance with the Act of June 14th, 1860.

A patent, issued under the Act of 1851, is, as has often been held by this Court, the final act in proceedings instituted for the confirmation of the claim of the patentee to land which had been granted by the former Government, and for the segregation of such land from the public lands of the United States; and it is a record which binds both the Government and the claimant, and cannot be attacked by

either party, except by direct proceedings instituted for that purpose (*Leese* v. *Clark*, 18 Cal. 535). While it stands, the claimant or those deriving title through him, will not be permitted to aver that the claim comprised other or different lands from those mentioned in the patent. Such being the nature and effect of the patent, the evidence offered by the plaintiffs to prove that the patent was void was properly excluded.

It is unnecessary, in order to give effect to a patent, to show an acceptance of it by the patentee. The general rule is that a patent takes effect upon its being issued, and it is unnecessary to show a delivery to or an acceptance by the patentee; and whatever may be the rule in the case of public lands which are exposed to sale under the laws of the United States, as to the power of the Government to vest title in a person against his will, it would seem to admit of no doubt that in a proceeding under the Act of 1851 the claimant is as powerless to prevent the patent from issuing and taking effect, if the proceedings have not been dismissed, as he is to prevent the rendition of a decree determining the question of the validity of the claim. When a private person files his petition for a confirmation, the patent, if the claim is confirmed, is a necessary step in the proceedings, and the assent of the claimant, or those claiming under him, is no more essential to its validity or effect, than to any other step in the proceedings.

It is contended by the plaintiffs that the survey, which is incorporated into the patent, does not accord with the decree of confirmation, and that they are entitled to rely upon the decree—which is also incorporated into the patent—for title to lands within the decree, but not within the survey. This position cannot be maintained consistently with the views already expressed as to the nature and effect of the patent. The patent purports to convey the lands described in the survey, and its scope cannot be extended, nor on the other

hand can it be limited, by showing that the decree comprised a greater or less area than the survey. Nor can the claimant, after admitting—as he must—the conclusive effect of the patent, make out title to lands not conveyed by the patent, by the production of the proceedings which culminated in the patent. The patent, while it remains in force, conclusively determines what lands the claimant was entitled to under his claim and the decree of confirmation. The claimant can neither reform the patent nor show that it is, in any respect, incorrect, in an action of ejectment.

The last course mentioned in the survey runs from a post and charred stake station "north three hundred and twenty chains to the point of beginning;" and it must be construed as running in a straight line between the points mentioned, unless there is something in the survey which will cause the course to deviate from a straight line. It is not claimed that the survey itself would permit any other than a straight line between the points above mentioned; but it is insisted that the boundaries mentioned in the decree of confirmation must prevail over those mentioned in the survey, whereby the last course in the survey will be divided into three or more courses. That construction would amount to the rejection of the last course of the survey, and require a point of beginning differing from that mentioned in the survey, and include lands not comprised in the survey, and exclude other lands from the survey. The survey must control, and as there is no reference in it to the juridical possession, the last course of the survey must run in a direct line to the point of beginning.

After the plaintiffs had given in evidence, among other things, the grant, testimonio of the juridical possession and decree of confirmation, and had given evidence tending to prove that the land in controversy was within the boundaries of the rancho, a witness stated that he had seen in the hands of Abel Stearns, who owned a specific portion of the rancho,

a patent for the rancho, and the patent was produced before the referee, and the referee then ruled that unless the patent was offered in evidence by the plaintiffs, the evidence already given by them would be stricken out. The plaintiffs excepted to that ruling, and thereupon gave the patent in evidence. We see no error in that ruling, for it appears from the patent that it was issued in the proceeding, of which the decree of confirmation given in evidence by the plaintiffs formed a part—the patent being the last step in that proceeding.

The position that the plaintiffs are entitled to a recovery on the ground of prior possession cannot be sustained, for there is no specification in the statement on new trial which will comprehend that ground.

Order and judgment affirmed.