[No. 6,794.—In Bank.]

## MIGUEL A. AGUIRRE v. D. W. ALEXANDER ET AL.

CONTRADICTORY INSTRUCTIONS—DESCRIPTION IN DEED—CONSTRUCTION.—A. being the owner of a tract of land, made a conveyance to O., who conveyed to A.'s wife. In an action of ejectment, the plaintiff claiming as heir of A., and the defendants as successors in interest of A.'s wife under a mortgage made by her after his death, and a foreclosure—it was admitted that the mortgage and foreclosure deed included the land in controversy, and the questions involved were whether the deed to O. also included the land, and if not, whether the plaintiffs were barred by the Statute of Limitations, and the court instructed the jury on the first point, at the request of the plaintiffs, that where there is a general description, and a specific description by metes and bounds, the latter must prevail; and, at the request of the defendants, that where land in a deed is well described by name or other general description and there is added by way of reiteration or affirmation a particular description by metes and bounds, which is inconsistent with the general description, the particular description must be rejected. *Held*, that the instructions of the Court upon this point were contradictory, and judgment reversed.

ID.—ID.—ID.—TENANT IN COMMON—ADVERSE POSSESSION—MISTAKE IN DEED—DECLARATION—EVIDENCE.—These subjects discussed in the several opinions of the Judges.

| 58 | 21 |
| 89 | 249 |
| 58 | 21 |
| 94 | 253 |
| 58 | 21 |
| 105 | 517 |
| 58 | 21 |
| 128 | 208 |

APPEAL from a judgment for the defendant, and from an order denying a new trial, in the Seventeenth District Court, County of Los Angeles. SEPULVEDA, J.

*Bicknell & White*, for Appellants.

Instructions given by the Court are inconsistent. (*People v. Campbell*, 30 Cal. 312; *McCreery* v. *Everding*, 44 id. 251; *Brown* v. *McAllister*, 39 id. 577; *Estate of Cunningham*, 52 id. 465; *Bank of Stockton* v. *Bliven*, 53 id. 708; *People* v. *Wong Ah Ngow*, 54 id. 154; *Chidester* v. *Con. P. Ditch Co.*, 53 id. 56.)

*Glassell, Smith & Smith*, and *A. H. Judson*, for Respondents.

Appellants claim that the instructions given with regard to the definition of actual ouster were inconsistent. The first of these—given at the instance of appellants—is that " as between tenants in common * * * nothing short of actual ouster will sever the unity of possession." This they say is inconsistent with the instructions—given at the instance of

respondents—that "proof of an actual ouster, that is, *a turning out by the shoulders* by one tenant in common of another, is not indispensable to commence an adverse possession."

The meaning of the terms actual ouster in the latter instruction, however, is limited and defined by the words italicized—so as to apply to no other case than the one actually put. The instruction, therefore, has precisely the same meaning as if the words "actual ouster" had been omitted.

Nor is there any inconsistency in the next two instructions quoted. In the first of these—given at the instance of the plaintiffs—the word "specific" is improperly used, and the instruction is, therefore, somewhat difficult to understand; but whatever the meaning of it be, it might very well be true as a general principle; and yet be true also, that where a particular description by metes and bounds is added merely by way of reiteration and affirmation after the land has already been well described, the former should be rejected. (*Piper* v. *True*, 36 Cal. 617.)

Nor is there anything in the sequel of the instruction opposed to this view. This is indeed so loosely worded as to be calculated to mislead, but it does not say anything that is not consistent with the true rule as laid down in our instruction. The terms of the instruction are that the deed "conveyed only the premises specifically described." This means nothing more than it would have meant if the word "specifically" had been omitted, and is to be construed simply as saying that the deed conveyed the land described.

The term specific is simply redundant. There can be no description whatever of land sufficient to define a particular tract that is not specific; and if the description is not specific it is not a description at all of any individual tract, but only of a class.

Thus in this case all the descriptions are clearly specific, and the most specific of all is the reference to the map and survey.

The criticisms of the appellants' attorneys, therefore, are merely verbal, not to say hypercritical; and there is no room for saying that there was any such substantial conflict in the instructions made as would likely mislead the jury. (*Brooks* v. *Crosby*, 22 Cal. 43; *Witherby* v. *Thomas*, 55 id. 9.)

McKEE, J.:

This case arises out of an action of ejectment, brought by the appellants to recover possession of a tract of land in Los Angeles County, known as part of the Rancho San Pedro, which had been granted by the Mexican Government, and for which a patent was issued in December, 1855, by the United States Government, to the grantees therein named.

Plaintiffs in the action are children and heirs at law of José Antonio Aguirre, deceased. As such they claim title to an undivided interest of the land in dispute. Defendants claim to have derived title to the land from the surviving widow of the deceased Antonio, by mesne conveyances from the purchaser at a mortgage foreclosure sale and sheriff's deed under which they severally entered into possession, believing and claiming that they had acquired an absolute title in fee; and it is contended that, under this claim of title, they have been in possession for more than five years before the commencement of the plaintiffs' action, and that the plaintiffs' cause of action, if any they ever had, is barred by the Statute of Limitations. (Code Civ. Proc., §§ 318, 319.)

The land in dispute is a tract which embraces portions of two parcels of the rancho San Pedro, one of which had been allotted to the said José Antonio Aguirre, and the other to one Concepcion Rodriguez, in a judicial partition of the ranch which took place in 1855, between them and the other tenants in common of the ranch. But, subsequently to the allotments and the final decree of partition confirming the same, Aguirre acquired by purchase the parcel which had been allotted and confirmed to Rodriguez. Having thus become the owner of both parcels, Aguirre, on the 9th of June, 1856, conveyed by metes and bounds, the parcel which had been allotted and confirmed to him, to one Augustin Olvera by a deed of bargain and sale; and Olvera on June 30th, 1856, by a like deed, conveyed the land, by the same specific description, to the wife of Aguirre and the mother of the plaintiffs. In 1858, Aguirre and his wife conveyed portions of both parcels to one Castello de Dominguez, and afterwards, in July, 1860, while the title to the remaining portions of the two parcels of the ranch stood partly in the name of his wife and partly in his

own name, José Antonio died, leaving his wife surviving him and the plaintiffs as his heirs-at-law.

Administration of his estate followed the death of Aguirre. But pending administration the widow intermarried with one Ferrar, and she and her husband, in 1863, mortgaged to one Temple, of Los Angeles, the land described in the complaint in the action.

The mortgage premises, however, did not include that parcel of the ranch described by metes and bounds in the conveyance by José Antonio to Olvera, and in the conveyance by Olvera to Mrs. Aguirre; and the title acquired by the defendants from her, by and through the foreclosure sale and sheriff's deed of the mortgage premises, did not attach to that parcel of the land the title to which then stood in the name of Mrs. Ferrar. As surviving widow of the deceased José Antonio, she had a mortgageable interest in both parcels of the ranch; but that interest was only an undivided interest, because being the common property of the husband and wife, the widow mortgaged only her interest, and the defendants who claim from her, acquired no greater interest by their conveyances; they became tenants in common with the plaintiffs of the land in dispute.

But it was contended by the defendants that there had been a mistake in the execution of the deeds by Aguirre to Olvera, and by Olvera to Mrs. Aguirre. In their answer they alleged that " while the father of the plaintiffs was the owner of the tract of land described in the complaint, *and of another tract adjoining it on the south,* he formed the intention of conveying the said tract of land to his wife Rosario Estudillo de Aguirre, and consulted a lawyer as to carrying said intention into effect. Being advised by his said attorney that a direct conveyance to his said wife would be invalid, and that it was necessary, in order to effectuate his said intention, that the title should pass through a third party, on the 30th day of June, 1856, with said intention, and no other, he executed a deed to Olvera.

" The real and mutual intention and understanding of the parties to said deed was to convey both of said tracts to the said Olvera; but by a mutual mistake of said parties the description by metes and bounds inserted in said deed did not

include the land described in the complaint, but only the tract adjoining it on the south; but it was the mutual intent that said description should include the former tract, and the said parties, at the time of its execution, and ever afterwards, believed that it did.  In pursuance of said original intention, the said Olvera afterwards executed a deed of conveyance of the land conveyed to him by the said Aguirre to the said Rosario Estudillo de Aguirre.  The real and mutual intention of the parties to this deed, also, was the conveyance of both of said tracts, but by a mutual mistake there was inserted the same erroneous description, by metes and bounds, that was contained in the deed to Olvera; but it was the mutual intent that the said description should include both tracts, and the said parties at the time of its execution and until lately believed that it did."

Now, in support of the issues made by the pleadings, the defendants, at the trial of the case in the Court below, on the cross-examination of a witness for the plaintiffs, elicited the following declarations of Aguirre respecting the conveyances made by him to his wife through the medium of Olvera:

"José Antonio Aguirre told me he wanted to leave to his wife and family the land that belonged to him in the Rancho San Pedro.  He had two sections—one that I sold him, and the one that he bought from my brother Pedro—and he told me that he wanted to make an arrangement with his wife to make her a deed so that she would be secured in case of his death.  Then, one day he came to Los Angeles, and when he returned, he told me that he had inquired of a lawyer, who told him he could not make any trade direct with his wife, that he should sell to a third party, and the third party to his wife, and that he was going to do it with Don Augustin Olvera, and he subsequently told me he had made the conveyance to his wife, through Olvera."

These declarations were admitted in evidence against the objections of the plaintiffs, and that is assigned as error.

Aside from the objection that the declarations were not in explanation of any matter to which the witness had testified in his examination in chief, we think that the declarations themselves were inadmissible.  It is undoubtedly true as a legal proposition, that verbal as well as written declarations

of a party to a transaction are admissible when they accompany some act, the nature, object, or motive of which is the subject of inquiry. (§ 1850, Code Civ. Proc.)   But they must be contemporaneous with the act to which they were intended to give character.   The declarations in evidence did not conform to that rule.   They did not grow directly out of the act of José Antonio in the execution and delivery of his deed to Olvera, for the purpose of conveying the land to his wife; nor does it appear that any of them were made during the continuance of the act, or at or immediately after its performance.   The first of them appear to have been made at some uncertain time before the making of the deed; the second on a "day when the actor came to Los Angeles," and the third at some time "subsequently" to the act.

The first is not connected with the act, because the form of the act was then unknown to the actor; the second and third were mere isolated conversations, one of which related to the manner of doing the act which he contemplated performing, and the other to the act *after* it had been performed. The exact time when any of them were made does not appear; there is nothing in the testimony from which it can be inferred that any of them were contemporaneous with the fact under consideration.   They can, therefore, be considered only as mere hearsay.   An act cannot be varied, qualified, or explained by declarations which amount to no more than a mere narrative of a past transaction, nor by an isolated conversation, nor by an isolated act done at a later period. (*Nutting* v. *Page*, 4 Gray, 584.)   It was, therefore, error to overrule the objections to such testimony.

We think the Court also erred in its instructions to the jury.   At the request of the plaintiffs' counsel it gave to the jury the following instructions upon the subject of ouster, viz.: "As between tenants in common the Statute of Limitations does not commence to run until there has been an actual ouster.   Nothing short of an actual ouster will sever the unity of possession."   And at the request of defendants' counsel, the following: "Proof of an actual ouster, that is, a turning out by the shoulders by one tenant in common of another, is not indispensable to commence an adverse possession." The Court also, at the request of plaintiffs' counsel, gave the

jury the following instruction on the question of descriptions of the land in deed from Aguirre and wife to Olvera: "Where there is a general description and a specific description by metes and bounds, the latter must prevail;" and at the request of defendants' counsel, the following on the same subject, viz.: "Where land in a deed is well described by name, or other general description, and there is added, by way of reiteration or affirmation, a particular description by metes and bounds, which is inconsistent with the general description, the particular description must be rejected."

These instructions are manifestly contradictory. As was said in *Brown* v. *McAllister*, 39 Cal. 573, "they are wholly repugnant and can not stand together, and for this reason, if there were no other error in the record, the judgment must be reversed." Where the instructions on a material point are contradictory, it is impossible for the jury to decide which should prevail; and it is equally impossible, after the verdict, to know that the jury was not influenced by that instruction which was erroneous, as one or the other must necessarily be where the two are repugnant.

It is urged that these hostile and opposing instructions did not prejudice the plaintiffs, because, as far as the question of ouster was concerned, the facts which established the ouster, were stipulated by the attorneys of the plaintiffs, were proved at the trial of the case, and were specially found by the jury. It *was* proved at the trial that the defendants had acquired whatever title and interest they had in the land by mesne conveyances from the widow of the ancestor of the plaintiffs; and that they and their grantors had been in possession under their conveyances, claiming title in themselves for a period of twelve years. It was also stipulated by the plaintiffs' attorneys, that each of the defendants had acquired his right and title to the land of which he was in possession, in good faith, and for a valuable consideration, and had entered into possession of it at the date of his deed; and that since the date of his entry and deed he had been openly, notoriously, and exclusively in the possession of it, cultivating and improving it, within a substantial inclosure, and claiming title to it adversely to the plaintiffs. It was also specially found by the jury that the plaintiffs were children of José Antonio Aguirre, deceased, and Rosario

Estudillo de Aguirre, and heirs-at-law of José Antonio Aguirre, deceased, who died in 1860, and were, at the commencement of the action, aged respectively twenty-nine. twenty-six, twenty-two, and twenty years of age; that the defendants, or their grantors, had entered into possession of the lands in dispute at dates ranging between the years 1868, 1869, and 1878; that the land claimed by each defendant had been actually occupied by his grantor in the year 1866; that each one of thirty-two of the defendants had inclosed the particular lot of land which he claimed, and that about twenty-four of the defendants had not made any inclosure; that all the defendants and their grantors had occupied and possessed the land for about twelve years, and that each of them entered under a deed conveying the title of Rosario Estudillo de Aguirre—the widow of José Antonio de Aguirre, deceased, and the mother of the plaintiffs—and "held their possession thereunder;" and that none of the defendants, or any of their grantors, had, at any time, notified the plaintiffs that he ever held, or claimed to hold, any part of the lands adversely to plaintiffs.

Now, during the twelve years in which the defendants or their grantors were in possession of the lands, the plaintiffs were out of possession, but they claimed title to the lands in themselves as heirs-at-law of José Antonio Aguirre, deceased, and as tenants in common with their mother (Rosario) and her grantees, the defendants, in possession. Both plaintiffs and defendants, therefore, claimed from the same source of title. The occupation of the property by the defendants, under their conveyances, was under and in subordination to the legal title claimed by the plaintiffs as tenants in common with the defendants; and the occupancy of each, or of his grantor, under his claim of title, founded upon his conveyance, was not exclusive of the right of the plaintiffs who were tenants in common with him. Such occupation was entirely consistent with the plaintiffs' title, and continued to be so until those in possession denied the plaintiffs' title, or committed an actual ouster of the plaintiffs. A mere adverse holding and claim of title by those who are tenants in common with others of a tract of land do not of themselves constitute an ouster of a co-tenant. Entry into possession and acts

of possession are referable to the community of title. A tenant in common has a right to assume that the possession of his co-tenant is his possession, until informed to the contrary, either by express notice, or by acts and declarations which may be equivalent to notice. (*Miller* v. *Myers,* 46 Cal. 535.) But the jury found that none of the defendants nor any of their grantors had ever notified the plaintiffs that he held or claimed to hold possession adversely to the plaintiffs, and the only question which remained for the consideration of the jury was, whether the evidence as to the character of the possession of each defendant, and the acts and declarations while in possession, were of a character to impart notice to the plaintiffs that the possession was adverse; and if so, at what time that knowledge was attributable to the plaintiffs, so that they might determine when an actual ouster of the plaintiffs took place. Upon this question the instructions of the Court tended to mislead the jury. We can not undertake to determine how far the jury may have been influenced by them in finding when a disseisin took place, which set the Statute of Limitations in motion against the plaintiffs.

Besides, upon this question of ouster which was involved in the issue of the Statute of Limitations, upon which the defendants relied as a bar to the action, both the jury and the Court disregarded the special verdict; for the jury specially found that some of the defendants did not actually oust the plaintiffs until 1873; that others did not until 1874, and others not until 1876. The action was commenced in 1878, so that the Statute of Limitations did not run, from the date of the ouster, as found by the jury, in favor of those of the defendants, at least, who ousted the plaintiffs in 1874 and 1876; and the plaintiffs were entitled to a verdict against them. Yet the jury returned a general verdict for them.

As a conclusion of law from the special verdict this general verdict was unwarranted. It was inconsistent with the special verdict, and the Court should have disregarded it, and given judgment for the plaintiffs upon the special verdict against those of the defendants in whose favor the Statute of Limitations had not run. This it did not do, and the judgment which it rendered in favor of those defendants was erroneous.

Moreover, there was no conflict of evidence upon the question of the respective ages of the plaintiffs at the commencement of the action—one of them was a minor, under the age of twenty-one years, and another, one year older than the age of majority—and the jury so specially found. As the law of these facts the Court gave the jury the following instruction, namely: " The Statute of Limitations does not run against a male until he has reached twenty-one years of age, nor against a female until she has attained eighteen years of age. This statute, therefore, has not commenced to run against said Martin Aguirre, he being a minor, and can not have been in operation against the other plaintiffs for a longer period than the time which has elapsed since they attained their majority; but in no event can the Statute of Limitations have been in operation against the plaintiffs unless they have been actually ousted in the manner already described, and then only from such ouster."

It is evident that the jury entirely disregarded this instruction, for they returned a general verdict against the plaintiffs. But it is said that the verdict is right and the instruction was wrong, because the Statute of Limitations runs against a minor as well as against an adult. Whether the rights of minors are barred equally with those of adults is a question which need not, under the circumstances, be determined. The fact with which we have to deal is, that the jury by their verdict disregarded the instruction of the Court; and, for that reason alone, it was the duty of the Court to set aside the verdict, whether the instruction was right or wrong. (*Emerson* v. *Santa Clara County*, 40 Cal. 543.) *Ad questionem facti non respondent judices; ad questionem legis non respondent juratores.*

At the request of defendants' counsel, the Court also gave to the jury some nine or ten instructions upon the question of the construction of written instruments. These, as abstract legal propositions, were, in the main, correct; but they were not pertinent to any issues of fact to be found by the jury, and for that reason they should not have been given. There is no rule of law better established than that the construction of written *instruments* is a matter of law for the Court, and not of fact for the jury, unless when the meaning

and construction are doubtful and depend upon extrinsic evidence. But there was no evidence in the case which required the jury to pass upon the question, for the Court had construed the only deed in evidence in the case about which there was any controversy, by telling them that "the deed conveyed only the premises therein specifically described; and that those who claimed under the deed had acquired no greater rights thereby than such as had been acquired by the grantee in that deed." In thus instructing them the Court gave the proper construction to the description of the property conveyed by the deed, and the jury were bound to accept it as the law of the question. There was, therefore, no question before them about which the instructions given them in relation to the construction of written instruments were in any respects applicable.

Order reversed and cause remanded for a new trial.

MORRISON, C. J., and THORNTON, J., concurred in the order of reversal.

McKINSTRY, J., concurring:

I concur with the judgment. The jury brought in a general verdict for defendants, and also passed upon certain questions submitted to them by order of the Court. If the special findings clearly indicated the purpose of the jury to decide, that, more than five years before the commencement of the action, all or any of the defendants, or their predecessors, had ousted plaintiffs Miguel Aguirre and Dolores Aguirre from the whole or from specific portions of the several tracts of land described in the answers of the respective defendants, and had continued in the actual and adverse possession, from such ouster, for five years or more after plaintiffs Miguel and Dolores were of full age, my views of the case would be modified. I should then be inclined to hold that, as to those plaintiffs and with respect to such tracts, the order denying the new trial was proper. I should so hold, whatever the errors of the trial Court in giving to the jury its interpretation of the deed from José Antonio Aguirre and wife to Olvera; since it would then have appeared that such errors could not have injured the particular plaintiffs, Miguel Aguirre and Do-

lores Aguirre, against whom the Statute of Limitations had run when the complaint was filed herein. But it can not be disputed that the special findings leave very great doubt as to the facts which the jury thereby intended to find. So far as they bear on the question of ouster and adverse possession, they are confused, uncertain, and not such as an adjudication of the rights of the parties may safely be based upon.

If, therefore, the errors committed by the Court below are such as demand a new trial as to any, they require a new trial as to all of the parties to this action.

At the request of plaintiffs, the Court below charged the jury: " In a deed of conveyance, where there is a general description and a specific description by metes and bounds, the latter must prevail; therefore the deed from José Antonio Aguirre and his wife Rosario Estudillo de Aguirre to Augustin Olvera conveyed only the premises therein specifically described, and those who claim under said deed have acquired no greater rights thereby than such as were so acquired by said Olvera."

On request by defendants, the Court instructed the jury: " Where land in a deed is well described by name, or other general description, and there is added, by way of reiteration or affirmation, a particular description by metes and bounds which is inconsistent with the general description, the particular description must be rejected."

It is not necessary to determine how far the question, whether the particular description was added " by way of reiteration or affirmation," was a question of *fact,* to be passed upon by the jury.

By the instruction last cited, the jury were, in effect, told that they were authorized to determine whether the land " was well described by name, or other general description," and to decide whether such general description controlled. For aught that appears, the jury did find that all the land within the general description passed by the deed.

Yet the jury had already been instructed that the specific description, by metes and bounds, must prevail, and that the deed conveyed only the premises so specifically described.

The two instructions were contradictory.

SHARPSTEIN, J., concurring :

I think that the instructions as to which description should prevail are contradictory, and that for that reason the order denying the motion for a new trial should be reversed.

ROSS, J., dissenting :

The premises in controversy form a part of the San Pedro Rancho, situated in Los Angeles County. In an action brought in the District Court of that county for the partition of the rancho—in which action all of the owners were made parties —an interlocutory decree was entered in the year 1855, by which it was, among other things, decreed that José Antonio Aguirre and Concepcion Rocha de Rodriguez each owned a certain undivided interest therein. Referees were appointed to make the partition in accordance with the interlocutory decree. Subsequent to the interlocutory decree, but before the entry of the final decree—that is to say, on the 18th of September, 1855—Concepcion Rocha de Rodriguez conveyed by deed all of her interest in the rancho to Manuel Dominguez, who (also prior to the entry of the final decree) sold the same to José Antonio Aguirre, the deed for which, however, he did not execute to Aguirre until December 27th, 1855. The final decree was entered on the 14th of the same month. The referees caused a survey and map of the rancho and of the respective allotments to be made, and in making the division allotted to José Antonio Aguirre one tract of land, in lieu both of the interest he originally had and of the interest he acquired from Concepcion Rocha de Rodriguez through Dominguez. On the map of the partition are set down the respective allotments of the various owners, each of which is surrounded by a differently colored line, and with the name of the party or parties to whom it is awarded written thereon. The allotment in question in this case is surrounded by red lines, but running through it, in an easterly and westerly direction, is a black line. On the tract surrounded by the red lines, and extending across the black line is written the name "José Antonio Aguirre ;" and on that portion of the tract surrounded by the red lines lying north of the black line, is written the name of " Concepcion Rocha de Rodriguez." On the margin of the

map is a table of the courses and distances of each allotment. Those referring to the allotment in question commence at station No. 1, and follow the red lines in the order of the stations, thus inclosing the whole tract; and at the bottom of the tabling the area of the whole tract is given thus : "Area ten thousand four hundred and five and one half." No courses or distances are given of the black line, and the surveyor who made the survey and map testified that this line was not run on the ground, but that he drew it on the map, through the red-line tract, for the purpose of showing the portion awarded to Aguirre by virtue of his original ownership and the portion he acquired through Concepcion Rocha de Rodriguez; and, further : " It was at the request of Aguirre and his attorney, Mr. Brent, that I treated the Concepcion Rocha tract as it is. At the time I made the survey this was considered Aguirre's land, and I was instructed to put it all in one lot and not run the division line, because it all belonged to one."

After the conveyance by Concepcion Rocha de Rodriguez, the action was continued in her name by virtue of § 385 of the Code of Civil Procedure, for the benefit of her successor in interest, and by the final decree that portion of the red-line tract situated south of the black line was awarded to Aguirre in his own name, and that portion of said tract lying north of the black line was awarded to him in the name of Concepcion Rocha de Rodriguez, in whose name, as already said, the action had been continued. Subsequently, to wit, on the 9th of June, 1856, Aguirre executed to Augustin Olvera the deed under which the defendants claim. If this deed conveyed to Olvera the land in controversy, then it is not pretended that the plaintiffs have any title; for they claim only as heirs of Aguirre. And that the deed *did* convey all of the disputed premises, appears from the record to have been supposed by the original grantor and all other parties in interest, until May, 1877, when the guardian of the minor plaintiffs discovered a " flaw in the title." In the mean time, a large number of persons (defendants here) had bought distinct parcels of the tract, and built up valuable improvements thereon. A few days after the conveyance from Aguirre to Olvera, the latter conveyed the same property to Rosario Estudillo de Aguirre, wife of José Antonio Aguirre. The

conveyance by Aguirre to Olvera, and by Olvera to the wife of Aguirre, was adopted by the parties as a means of vesting the property in Aguirre's wife. The witness Manuel Dominguez, in speaking of this circumstance, said: "José Antonio Aguirre told me he wanted to leave to his wife and family the land that belonged to him in the Rancho San Pedro. He had two sections, one that I sold him, and the one that he bought from my brother Pedro, and he told me that he wanted to make an arrangement with his wife to make her a deed so that she would be secured in the case of his death. Then, one day he came to Los Angeles, and when he returned he told me that he had inquired of a lawyer, who told him he could not make any trade direct with his wife: that he should sell to a third party, and the third party to his wife, and that he was going to do it with Don Augustin Olvera, and he subsequently told me he had made the conveyance to his wife through Olvera."

Whatever interest was acquired by the wife of Aguirre by the deed from Olvera is vested in the defendants, and as this interest is precisely the same as that conveyed *to* Olvera by the deed from José Antonio Aguirre, the question is, as already said, what is the true interpretation of the last mentioned deed ?—the description in which is as follows:

"A certain tract or parcel of land situated in the County of Los Angeles, and said tract or parcel aforesaid being a part of the land known by the name of the Rancho of San Pedro or Los Dominguez, and which piece of land is the same that belonged to José Antonio Aguirre, party of the first part, and which he has in his possession under a partition that was made of said land of the Rancho of San Pedro in December, 1855, as is set forth by a final decree in the matter of the District Court of the First Judicial District of the State of California, dated December 14th, 1855, entered in the Book of Judgments of said Court, and in conformity to the survey and map drawn of all the land aforesaid, by which is shown the portion and situation of land that belonged to each of the parties interested in said Rancho de San Pedro, and which survey and map drawn was executed by George Hansen, Deputy County Surveyor of the County of Los Angeles, and the portion of land which belonged to said José Antonio Aguirre,.

party of the first part, being bounded and described as follows, to wit: Commencing at a stone in the summit of a hill, the line of the northern exterior boundary of said rancho, being the tenth station on said map; thence running toward the north-east in a direct line to the point known as the old house, including the same, thence in a line, course east, to the river San Gabriel; thence down the mid-channel of said river to the north line in the boundary of Maria de Jesus Dominguez; thence following the north-west boundary of said Maria de Jesus and the north boundary of the said Manuel Dominguez to the point of beginning."

The last call in the deed, namely, the description by metes and bounds, only embraces that portion of the tract included within the red lines, and awarded to José Antonio Aguirre in the partition, which is situated south of the black line; and it is insisted on the part of the appellants that this specific description controls the other calls of the deed. On the other hand, it is urged for the defendants that the deed contains five calls, viz.: 1. The land "that belonged to José Antonio Aguirre and which he has in his possession under a partition made of the rancho of San Pedro in December, 1855." 2. "As is set forth by a final decree in the matter  *  *  * entered in the book of judgments of said Court." 3. "And in conformity to the survey and map drawn of all the land aforesaid, by which is shown the portion and situation of land that belonged to each of the parties interested in said Rancho de San Pedro, and which survey and map drawn was executed by George Hansen, Deputy County Surveyor," etc. 4. "The portion of land which belonged to José Antonio Aguirre." And, 5. The description by metes and bounds; and that the latter, to wit, the description by metes and bounds, was not intended to be used in the sense of restriction, but in the sense of reiteration or affirmation, and that in so far as it is erroneous or defective it must be rejected as false. In this I agree with the counsel for the defendants. The land which belonged to Aguirre, under the partition of the rancho, was the red-line tract, which included the premises in controversy, and the partition survey and map of the rancho showed this tract to have been allotted to him. All of the calls of the deed, therefore, except the de-

scription by metes and bounds, clearly enough refer to and describe the whole of the red-line tract, while the description by metes and bounds includes only a part of it.

In all cases of this character the paramount object is to ascertain and give effect to the intention of the parties, and this intention is to be gathered from the entire instrument. In *Peck* v. *Mallams,* 10 N. Y. 532, the Court of Appeals said: "The general rule in regard to the construction of the description of the premises in a deed is one of the utmost liberality. The intent of the parties, if it can, by any possibility, be gathered from the language employed, will be effectuated. To this end parts of the description may be rejected, though upon the face of the deed they seem as material as the parts which are left. This only is requisite, that after subjecting the description to every modification which the actual condition of the premises may require, there must be left some substantial designation of the thing to be conveyed, so that the Court can see, looking at the property in the condition in which it was at the time of the deed, that the description can be fitted to it and was intended by the parties to relate to it." (See also, *Cholmondeley* v. *Clinton,* 2 Jac. & W. 134; *Worthington* v. *Hylyer,* 4 Mass. 196; 3 Wash. on Real Prop., p. 333 *et seq.; Stanley* v. *Green,* 12 Cal. 148; *Piper* v. *True,* 36 id. 606; *Haley* v. *Amestoy,* 44 id. 132.) In the last case cited the deed first described the premises by name and then gave a particular description by metes and bounds, which only included a part of the land embraced in the first description; and this Court, taking in view all of the facts and circumstances surrounding the execution of the deed, held that "the particular description was not intended to be used in the sense of restriction, but in the sense of reiteration or affirmation, and that in so far as it was erroneous or defective it must be rejected as false."

It is not claimed that the testimony of Dominguez was admissible for the purpose of varying or contradicting the terms of the written conveyance, and it is very clear that it could not be received for that purpose. It was admissible, however, for the purpose of showing the true consideration of the deeds from Aguirre to Olvera and Olvera to Mrs. Aguirre, and also for the purpose of placing the Court in the

position of the parties in order that it might rightly interpret the language employed. In his work on Evidence, Mr. Greenleaf, after saying that there is no material difference of principle in the rules of interpretation between wills and contracts, except what naturally arises from the different circumstances of the parties, declares: "The object, in both cases, is the same, namely, to discover the intention. And, to do this, the Court may, in either case, *put themselves in the place of the party*, and then see how the terms of the instrument affect the property or subject-matter. With this view, evidence must be admissible of all the circumstances surrounding the author of the instrument. * * * It is only in this mode that parol evidence is admissible (as is sometimes, but not very accurately said) *to explain written instruments*, namely, by showing the situation of the party in all his relations to persons and things around him, or, as elsewhere expressed, by proof of the surrounding circumstances. Thus, if the language of the instrument is applicable to several persons, to several parcels of land, * * * to several monuments or boundaries, * * * or the terms be vague and general, or have divers meanings * * *; in all these and the like cases, parol evidence is admissible of *any extrinsic circumstance* tending to show what person or persons, or what things, were intended by the party, or to ascertain his meaning in any other respect; and this, without any infringement of the rule, which, as we have seen, only excludes parol evidence of other language, declaring his meaning, than that which is contained in the instrument itself." (1 Greenl. on Ev., §§ 287, 288; id., § 169.)

In the case at bar the deed itself contains several descriptive calls, all of which, except one, include the premises in controversy; and the main question is, which of those contradictory calls expresses the intention of the grantor. Applying the principles to which allusion has been made, and reading the deed in the light of the circumstances surrounding its execution, I think it manifest that the intention was to convey to Mrs. Aguirre all of the land embraced within what (for convenience of reference) has been designated as the red-line tract. This construction is strengthened by the further circumstance, that after the execution of the deed, no claim ap-

pears to have been asserted by Aguirre to any part of the premises during the remainder of his life, nor, after his death, by any of his heirs until May, 1877—a period of more than twenty years—when the supposed "flaw in the title" was discovered by the guardian of the then minor children, and years after all of the interest of Mrs. Aguirre had passed into the hands of a large number of people, who bought at various times distinct parcels of the tract upon the supposition that by the deed she acquired the entire tract, and who, since the dates of their respective purchases, have held adverse possession of the whole of their respective parcels, and have made their homes there.

The deed in question having, in my opinion, conveyed the entire tract embraced within the red lines, it results that the plaintiffs have no title to any part of it, and that they could not therefore possibly recover in the action. That being the case, it is not necessary to consider the instructions given by the Court below to the jury, since, even if erroneous, they they could not have prejudiced the plaintiffs. (*Green* v. *Ophir C. S. & G. M. Co.*, 45 Cal. 527; *Larco* v. *Casanueva*, 30 id. 561; *Hebbard* v. *Jefferson G. & S. M. Co.*, 33 id. 290.)

For these reasons the judgment and order of the Court below should, in my opinion, be affirmed. I therefore dissent from the judgment here.

MYRICK, J., concurred with Mr. Justice Ross.