[No. 7,354.—Department One.]

## HENRY P. IRVING v. FRANK CUNNINGHAM ET AL.

NEW TRIAL—DISCRETION OF COURT—CONSTRUCTION OF DEED.—A deed described the northern boundary of a tract of land as "a line drawn from a point two hundred varas south of a house occupied by a squatter named Espejo, and passing to a point at a small creek (un arroyito) about two hundred varas south of the house now occupied by" the grantor. There were at the time of the execution of the deed, and still are, two creeks, each of which had a name, the one—called the School House Creek—more than five hundred varas, and the other—called the Alta Creek—more than one thousand eight hundred varas to the south of that house. There was also evidence tending to prove that there was at the time of the execution of the deed, a small arroyo about two hundred varas south of the house, traces of which still remain.

*Held*, that the deed was to be construed as referring to the small creek or arroyito formerly existing two hundred varas south of the house.

ID.—ID.—Where the decision is against the weight of the evidence, it is the duty of the Court to grant a new trial. So held where a new trial was granted by the Superior Court in a case tried in the District Court.

` APPEAL from an order granting the plaintiff a new trial in the Superior Court of Alameda County. CRANE, J.

Petition for hearing in Bank was filed in this case after judgment, and denied.

*James McCabe*, for Appellants.

*Mich. Mullany*, for Appellant McCrindle.

*Henry P. Irving*, for Respondent.

ROSS, J.:

Appeal from an order made by the Superior Court of Alameda County, granting a new trial in a case tried before the late District Court of that county.   The principal question in the case relates to the proper location of one of the calls of the deed executed by Domingo Peralta to Hall McAllister and others, on the 16th of August, 1853.   The language of the deed describing the northern boundary line of the land conveyed by it is: "A line drawn from a point two hundred varas south of a house occupied by a squatter named Espejo, and passing to a point at a small creek (un arroyito), about two hundred varas south of the house now occupied by the said Don Domingo (the grantor in the deed) with his family ; and thence north-easterly," etc.   There is no dispute between the parties as to the location of the point two hundred varas south of the house occupied by Espejo, nor is there any conflict in the evidence about the fact that there were at the time of the execution of the deed in question, and still are, to the south of the house occupied by the grantor, Peralta, two creeks, each of which had a name, and both of which appear to have been well known—the one called School House Creek being more than five hundred varas, and the other, called Alta Creek, being more than one thousand eight hundred varas to the south of that house.

While it is very evident from the testimony that the witnesses do not agree in their ideas as to what constitutes "a creek," there is no doubt that the evidence strongly preponderates in favor of the proposition that there was, at the time of the execution of the McAllister deed, a small arroyo about two hundred varas south of the house of Peralta, traces of which still remain.   Many of the witnesses speak of this arroyo as a creek, some as a wet-weather run, others as a sag, and others still as a gulch or gully in which water ran in wet weather, and in which it stood in places in dry weather.   A

number of witnesses on behalf of the defendants testified that there was no "creek" to the south of Peralta's house nearer than that spoken of as School House Creek; but this does not necessarily controvert the existence of the place designated by the grantor in his deed as "un arroyito"—a small arroyo. At all events, the preponderance of the evidence is to the effect, that when the deed was executed there was a place in the surface of the ground, about two hundred varas south of Peralta's house, where water ran, whether it be called a run, gulch, gully, sag, or creek.

The learned Judge who first tried the cause found the true location of the disputed line to be from the point two hundred varas south of the house of Espejo to a point on *School House Creek* more than five hundred varas south of Peralta's house—upon the theory that there was no "creek" two hundred varas south of the latter house, and hence, that it was necessary to go to the first creek to be found to be south of the house, which was School House Creek. In this we think there was error. It must be remembered that the grantor, Peralta, was familiar with the land he was about to convey. It is almost within a stone's throw of the house in which he resided. In his deed he described it as "all that land bounded south by a line dividing his lands from his brother Vicente; east by the tops of the high mountains; on the west, by the Bay of San Francisco, and on the north by a line drawn from a point two hundred varas south of a house of a squatter named Espejo, and passing to a point at a small creek (*un arroyito*) about two hundred varas south of the house now occupied by said Domingo, with his family; and thence northeasterly in a straight line to the tops of the mountains." In describing the northern boundary line he commences at a point two hundred varas south of the house occupied by Espejo. As already said, there is no dispute about that point. It is two hundred varas from the house that was occupied by Espejo. In this instance, therefore, the grantor was correct in his estimate of the distance of two hundred varas. Is it possible that he could have been so much mistaken in estimating the like distance of two hundred varas in the next part of the same call of the same deed? He knew where his own house was, of course, just as he knew where the

house of Espejo was; and, in going from the point which he had correctly located at two hundred varas south of the house occupied by Espejo, he said the line should go to " a point at a small creek *(un arroyito)* about two hundred varas south" of the house occupied by himself and family. When he said this he could not have meant that the line should go to a creek which was known by name and which was situated more than *five* hundred varas to the south of his house. He could not have meant a distinct and well-known and named creek when he said " *un arroyito*" (a little arroyo), nor could he have mistaken the distance of two hundred varas for five hundred varas, especially in view of the fact that he had immediately before, in the same call of the same deed, showed a correct estimate of the distance of two hundred varas. The error committed arose from a misapplication of the general rule regarding natural boundaries to the evidence in this case.

The established rule forbidding us interfering with the order of the trial Court refusing a new trial, in cases where the evidence is substantially conflicting, has no application in a case like this, where the trial Court *granted* a new trial. Where the decision is against the weight of the evidence, it is the duty of that court to grant a new trial.

Order affirmed.

McKINSTRY, J., concurred.

McKEE, J., concurring :

Granting or denying a motion for a new trial made upon a settled statement of the case, which shows that there was a conflict or preponderance of evidence upon an issue of fact involved in the case, is a matter within the sound discretion of the trial Court, or its successor, which the appellate Court will not revise, except in a case in which there has been an abuse of discretion. The case in hand is not an exceptional one, and I, therefore, agree that the order appealed from be affirmed.