[Sac. No. 795.  In Bank.—December 28, 1903.]

HENRY MILLER, Appellant, v. C. E. GRUNSKY, Respondent.

141 441
|f149 450

STATE PATENT—SWAMP LANDS—BOUNDARY—LOCATION OF RANCHO—
SURVEYS—UNITED STATES MAP—REFERENCE TO MAP OF STATE SUR-
VEY—EVIDENCE.—In determining the boundary of a· state patent for
swamp and overflowed lands, a map of the government survey of the
township, not referred to in the state patent nor shown to have been
used or examined by the state officials, is not conclusive as to the
location of the eastern boundary of a rancho therein referred to, as
being much farther east than as indicated in the state patent, espe-
cially where the rancho is not disclosed on the government map to
have been marked by any inclosure or visible monuments.  Evidence
of the application for the state patent showing the description of
the land applied for, and of the map of the state survey of the
swamp land referred to in the patent, was admissible; and it ap-
pearing that the parties acted with reference to that map, it con-
trols any other and inconsistent particulars in the description in
case of ambiguous or equivocal calls, under subdivision 6 of section
2077 of the Code of Civil Procedure.

ID.—EFFECT OF STATE PATENT—CONSTRUCTION—CONFLICTING CALLS.—
A patent is conclusive between the parties and their privies against
any collateral attack; but before it concludes anything it must be
construed and its meaning determined, and conflicting calls therein
are to be reconciled upon the same principles and by the same rules
that govern the construction of other deeds of conveyance.

ID.—EARLIER STATE SURVEYS—MISTAKE IN FINAL CALL FOR RANCHO—
VISIBLE MONUMENTS—CHANGE IN SURVEY.—Earlier ·state surveys
for the same swamp lands, of which the survey for the state patent
was a recompilation, made before the township plat was approved in
the federal land office, showing the visible monuments first erected
to mark the eastern line of the rancho, according to the first survey
thereof for a patent, were properly admitted to show the origin of
the description in the state survey and patent, and to explain a mis-
take in the final call for the rancho therein, as compared with the
final survey of the rancho as patented, and as shown on the township
map.

ID.—EFFECT OF PRIOR SURVEY—SUBSEQUENT APPLICATION.—Where state
swamp lands applied for have been previously surveyed, the law
does not require a resurvey in the field upon a subsequent applica-
tion to purchase.

ID.—TOWNSHIP MAP AT DATE OF STATE PATENT—CALL FOR RANCHO IN
PATENT—EXCEPTIONS TO RULE AS TO MONUMENTS.—A call for the
same rancho in the state patent, which was then shown on the

township map, to be so located as to give a quantity of swamp land in excess of the state survey of one hundred and seventy-one acres, not paid for, does not show that the rancho was at the date of the patent a monument which inflexibly controls courses, distances, and quantity. This never was an absolute and inflexible rule; but calls for monuments have been made to yield to other calls to effectuate the intention of the parties. The rule, with its exceptions and modifications, is embodied in section 2077 of the Code of Civil Procedure.

APPEAL from a judgment of the Superior Court of Sacramento County. A. P. Catlin, Judge.

The facts are stated in the opinion of the court.

Mastick, Van Fleet & Mastick, for Appellant.

The patent includes the land in controversy, the call for the Orestimba Rancho being a call for a monument, which must control courses and distances. (Code Civ. Proc., sec. 2077, subds. 1, 2; *Adair* v. *White*, 85 Cal. 313; *Colton* v. *Seavey*, 22 Cal. 496, 502; *Central Irr. Dist.* v. *De Lappe*, 79 Cal. 351, 355; *Castro* v. *Barry*, 79 Cal. 443, 448; *Powers* v. *Jackson*, 50 Cal. 429; *Graybeal* v. *Powers*, 76 N. C. 66, 69; *James* v. *Brooks*, 6 Heisk. 151, 157; *Campbell* v. *Branch*, 4 Jones (N. C.) 313; *Corn* v. *McCrary*, 3 Jones (N. C.) 496, 499; *Mendenhall* v. *Paris*, 84 Cal. 193; *Bartlett Land Co.* v. *Saunders*, 103 U. S. 316; *Worsham* v. *Chisnon*, (Tex. Civ. App.), 28 S. W. Rep. 905.) A boundary of a tract of land called for must be construed to mean its true boundary, and not what the parties suppose it to be. (*Umbarger* v. *Chaboya*, 49 Cal. 525, 538; *Maxey* v. *Thurman*, 50 Cal. 321; *Cleaveland* v. *Flagg*, 4 Cush. 76; *Martz* v. *Hartley*, 4 Watts, 261; *Wiswell* v. *Marston*, 54 Mo. 270; *Northrop* v. *Sumney*, 27 Barb. 196; *Johnson* v. *Farlow*, 11 Ind. 199.) Evidence contradicting the description in the state patent was not admissible, it being conclusive. (*Smelting Co.* v. *Kemp*, 104 U. S. 636; *Irvine* v. *Tarbat*, 105 Cal. 237, 242; *Adair* v. *White*, 85 Cal. 313; *Chipley* v. *Farris*, 45 Cal. 527, 538-540; *Brewer* v. *Houston*, 58 Cal. 345; *O'Connor* v. *Frasher*, 56 Cal. 499, 501; *Dreyfus* v. *Badger*, 108 Cal. 58, 69.)

Stanton L. Carter, for Respondent.

The general intent must control in construing patents.

(*More* v. *Massini,* 37 Cal. 432; *Serrano* v. *Rawson,* 47 Cal. 55.) The patent refers to the survey and plat, and makes it a part of it. (*Vance* v. *Fore,* 24 Cal. 444; *Ferris* v. *Coover,* 10 Cal. 622; *Hudson* v. *Irwin,* 50 Cal. 450; *Serrano* v. *Rawson,* 47 Cal. 55; *Black* v. *Sprague,* 54 Cal. 272; *Cornwall* v. *Culver,* 16 Cal. 424; *Chapman* v. *Polack,* 70 Cal. 487; *Kenebeck Purchase* v. *Tiffany,* 1 Greenl. 219.[1]) The rule that monuments will control courses and distances is not inflexible, and the plain intention must control. (*White* v. *Luning,* 93 U. S. 528; *Heaton* v. *Hodges,* 30 Am. Dec. 740, note; *Irving* v. *Cunningham,* 58 Cal. 308; *Payne* v. *English,* 79 Cal. 546; *Higinbotham* v. *Stoddard,* 72 N. Y. 94; *Buffalo etc. Ry. Co.* v. *Stigeler,* 61 N. Y. 348; *Winans* v. *Cheney,* 55 Cal. 569.)

BEATTY, C. J.—Plaintiff sues to quiet his title to the west twenty chains of section 31 and of that part of section 30 lying south of the San Joaquin River in a certain township in Merced County. Defendant disclaims as to the east six and a half chains of the premises described in the complaint, but asserts title to the remainder, so that the tract in dispute is the west thirteen and a half chains of section 31, and of that part of section 30 south of the river. The land is swamp and overflowed, and part of the grant of the United States to the state of California. Each of the parties claims under the state,—plaintiff under a patent issued in December, 1873, defendant under a certificate of purchase issued in 1887. If the land in dispute was conveyed by the patent, the plaintiff has the title; otherwise, it belongs to the defendant. The trial court found for the defendant and entered judgment accordingly. Plaintiff appeals from the judgment upon the ground that the calls of the patent establish his title conclusively, and that the court erred in admitting over his objection incompetent evidence to explain, to vary, and to contradict the patent.

The evidence so objected to consisted principally of the plats and field-notes of official surveys made by the county surveyor of Merced County as a basis for the issuance of the patent under which plaintiff claims. These plats and field-

[1] 10 Am. Dec. 60.

notes were introduced for the purpose of aiding the court in determining which of two conflicting calls in the patent should prevail. The description in the patent, so far as material, reads as follows: "Survey No. 267 Swamp and Overflowed Lands, Merced County, township No. 7 south, range No. 10 east, Mount Diablo meridian: sections Nos. 19, 20, 28, 29, 30, 31, 32, and 33, portions of said sections, and more particularly described in field-notes of said survey, as follows: Beginning at the southeast corner of the southwest quarter of section thirty-three (33) in township seven (7) south, range ten (10) east, Mt. Diablo meridian, thence west 40.00 chs., thence north 20.00 chs., thence west 20.00 chs., thence north 40.00 chs., thence west 60.00 chs., thence south 20.00 chs., thence west 40.00 chs., thence south 20.00 chs., thence west 20.00 chs., thence south 20.00 chs., *thence west 6.50 chs. to the Orestimba Ranch, thence N. 0 degrees 20 minutes, E. 126.50 chs., to the San Joaquin River.*" The remaining calls, which meander the river eastwardly to a designated point, and thence south to the place of beginning, may for the present be disregarded.

A careful comparison of this description with the government township as defined by the public laws of the United States, of which we take judicial notice, will demonstrate the fact that it does not include in terms any portion of the west 13.50 chains of sections 30 and 31—the tract in controversy. It will be seen that it carries the southern boundary from the point of beginning, by various courses, to the southeast corner of the southwest quarter of the southwest quarter of section 31, which, if the township is of the size prescribed by law, we know is just twenty chains east of the southwest corner of the section and of the township. From this point it runs west only 6.50 chains (to the Orestimba Rancho), and thence north twenty minutes east 126.50 chains to the river. Now, as to the call for the Orestimba Rancho, which, it is contended by appellant, controls absolutely, and by an inflexible rule, all inconsistent calls (for courses, distances, and quantity), it is to be observed that we can know nothing, judicially, of its location. Looking to the patent alone, we would be bound to assume that a line or corner of the rancho is to be found at a point 6.50 chains west of the southwest corner of the southwest

quarter of the southwest quarter of section 31 (this point is hereinafter referred to as "the point noted"), for there is where the description in the patent places it, and it is quite consistent with every law and public record of which we can take judicial notice, that the northeast corner of the rancho may coincide with that point. This fact was thoroughly understood by plaintiff, and accordingly he did not in the trial court rest his case upon his patent alone. If he had done so, he must inevitably have been nonsuited. To make any case at all it was necessary for him to introduce evidence *aliunde* the patent to show that the Orestimba Rancho had an existence, and that it was located more than 6.50 chains west of the point noted. The evidence which he introduced for this purpose was a duly certified copy of the official plat of the United States survey of the township, upon the margin of which in the blank space west of the township line appear the words "Orestimba Rancho." Conceding that this evidence was competent and sufficient to show that there was a tract known as the Orestimba Rancho, the eastern boundary of which coincided with the western boundary of sections 30 and 31, it did not prove such facts as of any earlier date than July 26, 1870, the date of the official approval of the plat, and this date it will be found is material. Nor did this evidence show that the Orestimba Rancho—wherever located— was marked by any inclosure or visible monument whatever. In short, nothing was shown by this evidence except the naked fact that at the date of plaintiff's patent there was a map of the township on file in the office of some federal official (the surveyor-general or registrar of the local land office), upon which the Orestimba Rancho was platted on the west of the township—i. e. 20 chains instead of 6.50 chains west of the point noted. This map is not referred to in the patent, and there is no evidence or ground to presume that it was used or examined by any of our state officials concerned in the preparation and issuance of the patent. Considering the character of this evidence offered by plaintiff for the purpose of locating the Orestimba Rancho twenty chains instead of 6.50 chains west of the point noted, thereby producing an ambiguity of description where none appeared before, and all for the purpose of controlling the terms of the

patent, it seems singularly inconsistent for him now to contend that the court erred in admitting and considering evidence of the same character when introduced by the defendant, for the purpose of showing that on the maps actually used by our state officials, and referred to in the patent, the eastern boundary of the Orestimba Rancho was located where the call placed it,—i. e. 6.50 chains west of the point noted.

Before stating the particulars of the evidence which plaintiff contends was erroneously admitted over his objections, it may be well to call attention to the fact that the sale of state lands is regulated by statute. When plaintiff's application to purchase was made, in October, 1868, the statute in force was an act passed in April, 1868,—a general revision of previous acts regulating the sale of state lands. (Stats. 1867-1868, p. 507.) It contains detailed and minute regulations regarding applications to purchase, and all the steps leading up to the issuance of the patent. For the sale of swamp land the process in brief was as follows: The applicant was required to file with the surveyor of the county where the land was situate an affidavit containing, among other things, a description of the land he desired to purchase, whereupon it became the duty of the surveyor to make and record (except when surveys had already been made) a survey of the land applied for, and to complete and forward to the surveyor-general duplicate copies of such *"survey plat and field-notes,"* together with the application to purchase. If the surveyor-general approved the survey, he issued to the applicant a certificate of his approval, upon presentation of which to the county treasurer, the purchase money (one dollar per acre) was accepted and receipted for. Upon proof of payment the surveyor-general certified all the facts to the governor and secretary of state, who signed and sealed a patent containing, among other recitals, one to the effect that the "lands hereinafter described have been duly and properly surveyed in accordance with law." This recital, in itself, would be sufficient to connect the description in the patent with the plat and field-notes constituting a part of the records of the county surveyor's and surveyor-general's offices; but it will be seen from that portion of the description above quoted from this patent, that it makes direct reference

to "Survey No. 267, Swamp and Overflowed Lands." This reference to the survey is necessarily a reference to the plat which is an essential part of it, and thereby the description contained in the patent is brought within the operation of subdivision 6 of section 2077 of the Code of Civil Procedure, prescribing the rules for construing the description of lands. That subdivision reads as follows:—

"When the description refers to a map, and that reference is inconsistent with other particulars, it controls them if it appear that the parties acted with reference to the map; otherwise, the map is subordinate to other definite and ascertained particulars."

This rule, of course, applies to ambiguous descriptions,—descriptions requiring construction on account of false, conflicting or equivocal calls,—and is peculiarly applicable and absolutely controlling in this case. For, as has been shown, the officers charged with the duty of preparing, executing, and issuing patents of this character—the surveyor-general, governor, and secretary of state—have nothing to guide them in describing the land except the field-notes and plat returned by the county surveyor, together with the application to purchase. They must necessarily refer to the plat in describing the tract conveyed, and in this case they have actually done so. The plat, therefore, by the express terms of the code rule, "*controls*" other and inconsistent particulars in the description, and necessarily determines which of two inconsistent calls must give way whenever it confirms one of them and conflicts with the other. The court, therefore, did not err in admitting plaintiff's application to purchase and the approved surveys referred to in the patent. Nor was it prejudicial error, if error at all, to admit the prior surveys, made for other parties, of these same lands. Their certificates of purchase had been forfeited (presumably for non-payment) and Miller's application was to purchase the lands formerly surveyed for them. The lands having been previously surveyed, the law did not require a resurvey in the field, and presumably the survey accompanying Miller's application was compiled from the *data* in the surveyor's office, consisting of the plats and field-notes of the former survey. At all events, there is an exact correspondence between the earlier and

later surveys and plats, so far as they affect the question be-
fore us, and if the survey made for Miller was properly
admitted, the admission of the others did him no harm, unless
he was injured by the additional light they threw on the
origin of the mistaken call for the Orestimba Rancho. These
earlier surveys—of which the survey for Miller was a mere
recompilation—were made in 1865, five years before the gov-
ernment plat of the township was approved,—five years,
that is to say, before the Orestimba Rancho was located west
of the township line according to any evidence that had been
introduced in the case at the time when they were offered.
They showed that at the time they were made the eastern
boundary of the Orestimba Rancho was plainly marked by
the posts and mounds of a government survey 6.50 chains
west of the point noted, and it was so delineated on the plat
of the survey. This fact was subsequently explained by evi-
dence that the rancho had been twice surveyed—once in 1859,
and, upon the rejection of that survey, again in 1861. The
latter survey—how long after its date does not appear—was
finally patented, and then no doubt correctly marked on the
township plat at some date prior to its approval in 1870.
At the time of the state survey, however, the monuments first
erected to mark the boundary of the rancho were still stand-
ing,—some of them, at least,—and this fact explains the call
for the Orestimba Rancho at 6.50 chains west of the point
noted. The principle upon which the ruling admitting this
evidence may be sustained is illustrated by the decision in
*Irving* v. *Cunningham,* 58 Cal. 306. A deed contained a call
for a line running two hundred varas to a creek *(arroyito).*
There was no creek upon the course of that line nearer than
five hundred varas, and the contention was that the natural
visible monument must prevail over the call for distance. But
it appeared that there was a small gully, at about the distance
of two hundred varas, in which water ran in rainy weather.
It was held that the grantor was more likely to have called
this gully a creek than to have been so badly mistaken as to
the distance, and the call for distance prevailed. So here
it not only appears that the agents of the state might have
been mistaken as to the boundary of the rancho, but that they
were mistaken, and were led into their mistake by the visible

monuments of a former boundary. Appellant would have us entirely disregard this natural and excusable mistake, with the consequence of more than trebling the call for distance, and also of violating other important calls of the patent. For, if we extend his southern boundary to the township line, it results in increasing the length of the western line running to the river, changes the courses and distances of the meandering lines along the river from the northwest corner of the survey, and adds one hundred and seventy-one acres to the quantity of land contained in the survey, as returned and approved, and this one hundred and seventy-one acres is land which is sold by the acre, and which has never been paid for.

Further discussion of this point is perhaps unnecessary, for if the admission of survey 267 was not error,—as it clearly was not,—and if the plat constituting an essential part of that survey proves, as it does, that all parties to this patent understood that the Orestimba Rancho was only 6.50 chains west of the point noted, the admission of other evidence to show how they came to be mistaken, though it may have been superfluous, and even incompetent, could not possibly have been prejudicial.

The proposition advanced by appellant, that a patent issued by the state is conclusive as to all matters therein contained, and that extrinsic evidence is not admissible to impeach, vary, or even explain it, etc., if accepted to its full extent, would, as we have seen, put him out of court, for his patent not only does not include the land in controversy, but by a description which, read in connection with the law, is exact and definite and complete in itself, clearly excludes it. But qualifying the proposition as it must be qualified, it may be said that the respondent does not controvert it, and we certainly do not question it. A patent is no doubt conclusive between the parties and their privies against any collateral attack, but before it concludes anything it must be construed and its meaning determined, and when it contains conflicting calls they are to be reconciled upon the same principles and by the same rules that govern the construction of other deeds of conveyance. This proposition is as vital to appellant's contention as to that of the respondent. The whole difference

between them consists in the different rule .of construction for which they contend. Appellant claiming that the Orestimba Rancho, as platted on the township map, was, at the date of the patent, a monument, insists that the absolute and inflexible rule of law requires all conflicting calls for distance, etc., to give way to the call for the rancho.

But this was never an absolute and inflexible rule. On the contrary, it has always been subject to exceptions and qualifications of various kinds, and the books are full of cases in which the call for visible monuments has been made to yield to other calls in order to carry out the true intention of the parties to conveyances of lands. And our statute (Code Civ. Proc., sec. 2077) has adopted the rule with all its exceptions and qualifications. It is true that, among other rules prescribed by this section of the code, it is provided in subdivision 2 that when permanent and visible or ascertained boundaries or monuments are inconsistent with the measurement, either of lines, angles, or surfaces, the boundaries or monuments are paramount; but this, like every other rule embraced in the section, is subject to the qualification contained in the first clause, that they control only when there are no other sufficient circumstances to determine a doubtful construction, and it is further subject to the rule prescribed by the sixth subdivision, that a map referred to in the deed, and with reference to which the parties acted, *controls* other particulars. In view of this statutory rule, it is hardly necessary to quote the decisions, but this court has more than once resorted to an accompanying map for the purpose of construing a deed. In *Serrano* v. *Rawson*, 47 Cal. 55, the court said: "In determining the location, the plat of the survey, which is a part of the patent, is often entitled to as much, and perhaps to more, weight than the courses and distances. (*Vance* v. *Fore*, 24 Cal. 435.) In all cases of conflicting descriptions, the object of the court is to ascertain the intention of the parties, and the entire description contained in the instrument should be resorted to for the purpose of ascertaining the intention."

Numerous decisions here and elsewhere might be quoted to the same effect, but to do so would unnecessarily extend this opinion.

Appellant cites a number of cases to the proposition that when a boundary-line is called for it means the true boundary of the tract, and not what the parties may have supposed the lines to be. In every one of these cases the boundary-line was the only call; there was no conflicting call corresponding to what the parties supposed to be the true boundary; there was no survey, and no map or plat; no reference to any line marked by a fence or other visible monument.

There was some other evidence admitted over appellant's objection, but the rulings of the court were correct, except perhaps in admitting the alleged protest of appellant against the issuance of a certificate of purchase to the defendant. We do not see how that evidence could have been considered relevant, but it was certainly harmless.

The judgment is affirmed.

Angellotti, J., and Lorigan, J., concurred.

SHAW, J.—I concur in the foregoing opinion of the chief justice, and also in the concurring opinion of Mr. Justice Van Dyke.

VAN DYKE, J., concurring.—I concur. It is quite true, as claimed by the appellant, that a patent issued by the United States or the state under provisions of law for the disposal of public land is conclusive as to all the antecedent acts required by law to authorize the issuing of the patent, and that the patent cannot be collaterally attacked by showing that any such acts were not complied with. The evidence here in question, however, was not offered by the defendant for the purpose of impeaching, contradicting, or varying the patent, but to aid the court in reconciling the inconsistent calls in the description of the premises conveyed, so as to arrive at the true meaning of the instrument. It is conceded that there is an error in the description, and the question is as to which one of the conflicting calls controls. The appellant contends that the call "to the Orestimba Rancho" constitutes a designation of a monument which controls in the description over the distance, course, and quantity given. The rule governing the construction of descriptive parts of a conveyance has been carried into our codes. It is declared

that when the construction is doubtful, and there are no other sufficient circumstances to determine it, and that there are certain definite and ascertained particulars in the description, the addition of others which are indefinite, unknown, or false, does not frustrate the conveyance, but it is to be considered by the first-mentioned particular. That when permanent and visible or ascertained boundaries or monuments are inconsistent with the measurement, either lines, angles, or surfaces, the boundaries or monuments are paramount. When the description refers to a map, and that reference is inconsistent with other particulars, it controls them if it appears that the parties acted with reference to the map. (Code Civ. Proc., sec. 2077, subds. 1, 2, 6.) And it is further provided that for the proper construction of an instrument the circumstances under which it was made, including the situation of the subject of the instrument and all the parties to it, may also be shown, so that the judge may be placed in the position of those whose language he is to interpret. (Code Civ. Proc., sec. 1860.) The reason why monuments, as a general thing, in the determination of boundaries, control courses and distances is, that they are less liable to mistakes. But this rule is not inflexible; it ceases with the reason for it, as when the monuments referred to are not known and visible objects on the ground. Grants or conveyances generally are to be interpreted in like manner as written contracts, and should be so interpreted as to give effect to the mutual intention of the parties at the time of the contract or conveyance. The patent in this case recites that it appears by the certificate of the register of the state land office (giving the date and number), that the tracts of swamp and overflowed lands thereinafter described have been duly and properly surveyed in accordance with law, and full payment made to the state for the same, and more particularly described in the field-notes of said survey, as follows, etc.,—then giving the description by courses and distances,—containing, as stated, 1,878.26 acres. But to carry the western boundary to the westerly line of the township and the easterly line of the Orestimba Rancho would require twenty chains instead of six and a half, and would embrace one hundred and seventy one acres more than stated in the patent. Parties to a con-

veyance are supposed to be on the land or acquainted with the land conveyed, and to have noticed permanent objects constituting the boundary referred to in the description of the property conveyed. Judge Sanderson, in *Walsh* v. *Hill*, 38 Cal. 487, speaking on this question of the descriptive parts in a conveyance, says: "In conclusion, upon this branch of the case, we deem it proper to say, that in the construction of written instruments we have never derived much aid from the technical rules of the books. The only rule of much value—one which is frequently shadowed forth, but seldom, if ever, expressly stated in the books—is to place ourselves as near as possible in the seats which were occupied by the parties at the time the instrument was executed; then, taking it by its four corners, read it." It does not appear that there is any monument or object on the ground at the west line of the township and the east line of the Orestimba Rancho, as finally located, but that the same is an imaginary line. It is different, therefore, from a case where there is a permanent object or monument on the ground, like a river, or stream, or point of rocks, or known tree, or anything of the kind. There is no reason, therefore, why the call "to the Orestimba Rancho" should control all the other parts of the description inconsistent with it,—to wit, courses, distances, and quantity of land conveyed. In *Pico* v. *Coleman*, 47 Cal. 65, it is said: "In construing a deed, all its parts must be consulted, and it must be read in the light of surrounding circumstances, and the intention of the parties arrived at in this way." In *Serrano* v. *Rawson*, 47 Cal. 55, the court says: "In determining the location, the plat of the survey, which is part of the patent, is often entitled to as much, and perhaps to more, weight than the courses and distances. In all cases of conflicting description, the object of the court is to ascertain the intention of the parties, and the entire description contained in the instrument should be resorted to for the purpose of ascertaining the intention. Courts will give effect to every part of the description, if possible; but if this cannot be done, they reject that which is repugnant to the general intent of the instrument." And it is also the rule in the interpretation of contracts or conveyances that where uncertainty exists in the contract as between a public officer or

body, as such, and a private party, it is presumed all uncertainty was caused by the private party. (Civ. Code, sec. 1654.) In this case it cannot be presumed that the state, or its officers, intended to convey by patent to the plaintiff one hundred and seventy-one acres more than he paid for, and any mistake in the description which would result in that is presumed to have been caused by the grantee, and not so intended by the grantor. The plaintiff applied to purchase "a certain tract of swamp and overflowed land in Merced County, lying and situate on the left bank of the San Joaquin River, being the lands surveyed for William Wilson, R. M. Wilson, Noah Stitts, N. B. Eldred, and William Miles, in township 7 south, range 10 east, base and meridian of Mount Diablo." In the field-notes of the survey for William Wilson, the tract of land bordering on the premises in controversy, it is stated by the surveyor that there was "a well preserved cor. of Orestimba Rancho found 40 chains north, 20 minutes east of the S. E. cor. of the Rancho." The plat of the survey in question shows a mound at the corner mentioned, which is made the southwest corner of the land so surveyed, and a line from this to the San Joaquin River, as indicated on said map, leaves a strip of land between that and the township line (being the land in controversy), which is marked on said map as part of the Orestimba Rancho. It is quite reasonable to suppose, therefore, that the designation "to the Orestimba Rancho" in the patent was intended to refer to this line from the mound to the river, as indicated by the survey for Wilson. This would reconcile the various calls in the description of the land conveyed. In view of the discrepancy in question, it was entirely proper to admit in evidence the application of the plaintiff to purchase the land, as well as the surveys of the parties from whom he purchased, as they would enable the court to determine which of the calls was erroneous.

McFarland, J., and Henshaw, J., dissented, and adhered to the opinion delivered in Department.

The following is the opinion of Department Two rendered on the 27th of November, 1901, and adhered to by Justices Henshaw and McFarland:—

HENSHAW, J.—This action was to quiet title to a strip of land in the county of Merced. The strip of land in dispute was the west thirteen and a half chains of sections 30 and 31 in a certain township. The land was swamp and overflowed land, and title thereto was vested in the state under the Swamp Land Act. Plaintiff claimed title under a patent issued to him by the state in December, 1873, while defendant's claim is based upon a certificate of purchase dated in 1887. Plaintiff's patent was for 1878 acres, described by courses and distances. After carrying the boundary to a certain point, the next and disputed course and call is "thence west 6.50 chains to the Orestimba Rancho, thence," etc. As shown by the township plat this easterly line of the Orestimba Rancho, is coincident with the westerly township line, and in order to reach that line the course should be twenty chains instead of six and a half chains. Defendant contends that the distance and course of six and a half chains so named in the patent must control the call to the Orestimba Rancho line, and that there is thus excluded from the patent the strip of land thirteen and a half chains in width, ownership of which is claimed by both parties hereto. The court, under objection and exception of plaintiff, admitted certain evidence offered by defendant in support of his contention. This evidence consisted of former applications by other parties, with the surveys attached thereto, and the application made by the plaintiff to the surveyor-general, on which defendant insists that plaintiff's patent was issued. The field-notes of the survey were admitted with the application. The evidence shows that the approved official survey of the Orestimba Rancho, upon which patent was issued, was made in 1861. The west boundary of the township plat is shown by the plat itself to be coincident with the easterly boundary of the Orestimba Rancho (so far as affects the land here in question). This west boundary was surveyed by the United States in 1859, and the map of the township was approved on July 26, 1870. The patent to plaintiff was issued December 5, 1873, after these approved official surveys of the Orestimba Rancho and the westerly line of the township. The patent to plaintiff, then, is to be construed with such light as may be thrown upon it by these earlier approved surveys.

It is the general rule that a call in a grant or patent for a permanent monument, natural or artificial, controls a conflicting call for courses and distances, and the exceptions to this rule are those which arise only when upon the face of the grant or patent it can be seen that the call for the monument is clearly false or mistaken. Such is the rule of construction laid down in the Code of Civil Procedure by subdivisions 1 and 2 of section 2077, and supported by the uniform current of authority. (*Colton* v. *Seavey,* 22 Cal. 496; *Powers* v. *Jackson,* 50 Cal. 429; *Central Irr. Dist.* v. *De Lappe,* 79 Cal. 351; *Castro* v. *Barry,* 79 Cal. 443; *Adair* v. *White,* 85 Cal. 313; *Mendenhall* v. *Paris,* 84 Cal. 193; *Bartlett Land Co.* v. *Saunders,* 103 U. S. 316.) The boundary-line of another tract of land is a "monument" within this rule of construction, and where that boundary-line is certain, as it is in the present case, it is a monument of highest dignity. Thus in *Graybeal* v. *Powers,* 76 N. C. 66, it is said: "A call for the line of another tract of land is 'a natural boundary' and controls course and distance, on the ground that there can be no mistake in respect to the intention to go to the line of the other tract; whereas in respect to course and distance there may be a mistake in entering upon the field-notes, or in transferring the entry to the description set out in the grant." We have then presented the case of a patent which, without ambiguity or uncertainty, calls for a fixed monument, which call is inconsistent with the distance given to reach that monument. There can be no doubt (here limiting the consideration to the face of the patent) that the distance must give way to the known and fixed monument.

Defendant's counsel, as we read his brief, does not seriously oppose the soundness of this conclusion, but the patent contains the following: "Said lands being situated in Merced County, and described as follows, to wit: Survey No. 267, Swamp and Overflowed Lands, Merced County, . . . and more particularly described in the field-notes of said survey as follows:" (Following which comes the description of the land, with courses, distances, and calls.) Because of this reference in the patent to survey No. 267, defendant insisted, and the court so ruled, that he was entitled to introduce in evidence the original survey so numbered, with the applica-

tion upon which it was based, and that, as that application referred to the application of others, he was likewise entitled to introduce those several applications, with the surveys thereto attached, and that, considering all of these papers and all of these surveys, it appeared that the inclusion in the patent of the call to the Orestimba Rancho was, if not a false call, at least an uncalled-for and improper insertion, which should therefore be disregarded. But a patent of the United States is conclusive as to the matters therein contained, and especially so as to the description of the land granted, and extrinsic evidence is not admissible to impeach or vary it, and never are the proceedings upon which the issuance of the patent was based admissible in evidence for any of the indicated purposes. (*Moore* v. *Wilkinson,* 13 Cal. 478; *Yount* v. *Howell,* 14 Cal. 465; *Chipley* v. *Farris,* 45 Cal. 527; *Cruz* v. *Martinez,* 53 Cal. 239; *O'Connor* v. *Frasher,* 56 Cal. 499; *Brewer* v. *Houston,* 58 Cal. 345; *Adair* v. *White,* 85 Cal. 313; *Heinlen* v. *Heilbron,* 97 Cal. 101; *Irvine* v. *Tarbat,* 105 Cal. 237; *Dreyfus* v. *Badger,* 108 Cal. 58; *Smelting Co.* v. *Kemp,* 104 U. S. 636.) In *Chipley* v. *Farris,* 45 Cal. 527, the patent was issued upon a confirmed Mexican grant, the decree of confirmation being set out in the patent. The granting clause of the patent, however, did not cover all the land that was contained in the decree of confirmation, and the patentee sought the aid of the decree so set out in the patent, to modify the granting clause of the patent. This court held that it could not be used for that purpose, and said: "A patent . . . is a record which binds both the government and the claimant, and cannot be attacked by either party, except by direct proceedings instituted for that purpose. While it stands, the claimant, or those deriving title through him, will not be permitted to aver that the claim comprised other or different lands from those mentioned in the patent. . . . It is contended by the plaintiffs that the survey, which is incorporated into the patent, does not accord with the decree of confirmation, and that they are entitled to rely upon the decree, which is also incorporated into the patent, for title to lands within the decree, but not within the survey. This position cannot be maintained consistently with the views already expressed as to the nature and effect of the

patent. *The patent purports to convey the lands described in the survey, and its scope cannot be extended, nor on the other hand can it be limited, by showing that the decree comprised a greater or less area than the survey.* Nor can the claimant, . . . make out title to lands not conveyed by the patent, by the production of the proceedings which culminated in the patent. The patent, while it remains in force, conclusively determines what lands the claimant was entitled to under his claim and the decree of confirmation. The claimant can neither reform the patent nor show that it is in any respect incorrect." In *Brewster* v. *Houston,* 58 Cal. 345, the contention was the exact opposite of the one in the case at bar. Plaintiff deraigned title under a state patent, which described the land as survey No. 433. The court, against defendant's objection, admitted evidence that survey No. 433 was a resurvey of survey No. 126, and so admitted survey No. 126. In that survey the first call read, "running thence east 38.35 chains *to Old River."* If the latter words were to be read as part of the description, the plaintiff was entitled to recover, but otherwise not; and plaintiff's claim there was, that the italicized words had been omitted from the patent by mistake, just as in this case it is insisted that the call "to the Orestimba Rancho" was inserted by mistake. This court confirming a judgment of nonsuit said: "If a mistake was made in failing to insert a description in the patent, we cannot see how it can be corrected in this action." So here we say that if a mistake was made by inserting an erroneous call in the patent, we fail to see how it can be corrected upon this collateral attack.

Therefore, without regard to the sufficiency of the admitted evidence to prove what it is contended by respondent that it did prove, we hold that its admission was erroneous, and the judgment appealed from is reversed and the cause remanded.