[L. A. No. 1926. In Bank.—February 27, 1908.]

## DARIO ORENA et al., Executors, etc., et al., Appellants, v. JOSEPH H. NEWLOVE et al., Executors, etc.; et al., Respondents.

DEED—INTENTION OF PARTIES—BOUNDARY OF MEXICAN GRANT—MONUMENTS—MISTAKES IN COURSES AND DISTANCES—ERRORS IN MAP REFERRED TO.—Where a deed by the owner of a Mexican grant called for its northwestern boundary, on which monuments were placed, but there was a mistake in the field-notes of the survey thereof as to courses and distances thereon, which, if followed, would leave a narrow strip of worthless land shaped like a church spire, and which was followed in a map made by a county surveyor without survey, showing a mistake in acreage, which was referred to in the deed, and its mistakes inserted therein,—held, that it was the real intention of the grantor and grantee that the actual northwestern boundary of the rancho should be the northwestern boundary of the tract conveyed, and that the grantor had no intention of reserving to himself that strip of land.

ID.—TERMINAL MONUMENTS ON BOUNDARY—COURSES, DISTANCES, AND ESTIMATED QUANTITY ·CONTROLLED.—The call in the deed for the boundary of the rancho must be construed as a call for its actual boundary fixed upon the ground by its terminal monuments, which must control any mistakes in courses, distances, and estimated quantity contained in the deed.

ID.—CONSTRUCTION OF PRIVATE DEED AGAINST GRANTOR.—The construction of a private deed is against the grantor and in favor of the grantee.

ID.—REFERENCE TO COUNTY SURVEYOR'S MAP NOT CONTROLLING.—Under the circumstances of this case the reference in the deed to the map of the county surveyor, and the adoption of its mistakes in description of boundary and quantity in the deed, is not controlling as to the land intended to be granted by the boundary of the rancho, where said boundary is called for in the deed and also in the map, which contains some reference to monuments, and is controlled as to its mistakes by the monuments known by the parties to exist on the ground.

APPEAL from a judgment of the Superior Court of Santa Barbara County and from an order denying a new trial. J. W. Taggart, Judge.

The facts are stated in the opinion of the court.

Bishop, Wheeler & Hoefler, Chas. S. Wheeler, and J. F. Bowie for Appellants.

The parties contracted with reference to a particular county map made by the county surveyor, and its description is controlling as to the intention of the parties and the location of the boundary therein described. (*Miller* v. *Grunsky,* 141 Cal. 441, 66 Pac. 858, 75 Pac. 48; *Chipley* v. *Farris,* 45 Cal. 527; *Schenley* v. *Pittsburg,* 104 Pa. St. 472, 480; *New York etc. Land Co.* v. *Thomson,* 83 Tex. 169, 17 S. W. 920; *Jones* v. *Johnson,* 18 How. (U. S.) 150.)

B. F. Thomas, Lee, Scott & Chase, and J. S. Chapman, for Respondents.

The object of construction is to ascertain the intention of the parties. (Civ. Code, sec. 1637; *Brannan* v. *Mesick,* 10 Cal. 95; *Reedy* v. *Smith,* 42 Cal. 245, 251; *Racouillat* v. *Dansevain,* 32 Cal. 376, 387; *Sprague* v. *Edwards,* 48 Cal. 239; *Miller* v. *Grunsky,* 141 Cal. 441, 447, 450-453, 66 Pac. 858, 75 Pac. 48; *Waterman* v. *Andrews,* 14 R. I. 589.) Parties to a conveyance are supposed to be on the land or acquainted with the land conveyed, and to have noticed permanent objects constituting the boundary therein referred to. (Van Dyke, J., in *Miller* v. *Grunsky,* 141 Cal. 452, 453, 66 Pac. 858, 75 Pac. 48.) The call in the deed for the western boundary of the ranch is the call for a monument or monuments in the survey thereof constituting the boundary controlling inconsistent

courses or measurements. (Code Civ. Proc., sec. 2077, subd. 2; *Kittle* v. *Pfeiffer*, 22 Cal. 491; *Colton* v. *Seavey*, 22 Cal. 497; *Piercy* v. *Crandall*, 34 Cal. 334; *Umbarger* v. *Chaboya*, 49 Cal. 525; *Powers* v. *Jackson*, 50 Cal. 429, 432; *Perry* v. *Richards*, 52 Cal. 496; *Rice* v. *McKune*, 63 Cal. 124; *Chapman* y. *Polack*, 70 Cal. 487, 11 Pac. 764; *Hughes* v. *Wheeler*, 76 Cal. 230, 18 Pac. 386; *Castro* v. *Barry*, 79 Cal. 448, 21 Pac. 946; *Whiting* v. *Gardner*, 80 Cal. 78, 80, 22 Pac. 71; *Anderson* v. *Richardson*, 92 Cal. 623, 28 Pac. 679; *Gordon* v. *Booker*, 97 Cal. 586, 32 Pac. 593; *Harrington* v. *Boehmer*, 134 Cal. 196, 66 Pac. 214, 489; *Miller* v. *Grunsky*, 141 Cal. 450, 66 Pac. 858, 75 Pac. 48; *Galbraith* v. *Shasta Iron Co.*, 143 Cal. 94, 76 Pac. 901; *Kimball* v. *McKee*, 149 Cal. 436, 450, 86 Pac. 1089, 1095; *Bartlett Land and Lumber Co.* v. *Saunders*, 103 U. S. 316; Devlin on Deeds, Vol. 2, sec. 1034; 4 Am. & Eng. Ency. of Law, 2d ed., pp. 771, 773, 780, 783, 785; *Chapman* v. *Hamblet*, 100 Me. 454, 62 Atl. 215; *Ogden* v. *Porterfield*, 34 Pa. St. 191; *Nash* v. *Atherton*, 10 Ohio, 163; *Sparhawk* v. *Bagg*, 82 Mass. (16 Gray), 583; *Rowell* v. *Weinemann*, 119 Iowa, 256, 97 Am. St. Rep. 310, 93 N. W. 279; *Martin* v. *Carling*, 19 Wis. 454, 88 Am. Dec. 696; *Billingsley* v. *Bates*, 30 Ala. 376, 68 Am. Dec. 126.) The construction of the deed must be most favorable to the grantee. (Civ. Code, sec. 1067; *Dodge* v. *Walby*, 22 Cal. 229, 83 Am. Dec. 61; *Vance* v. *Ford*, 24 Cal. 446; *Castro* v. *Tennant*, 44 Cal. 257; *Walsh* v. *Abbott*, 145 Cal. 288, 104 Am. St. Rep. 38, 78 Pac. 715; *Melvin* v. *Proprietors*, (5 Met.) 46 Mass. 15, 38 Am. Dec. 384; 4 Am. & Eng. Ency. of Law, p. 80.) The construction placed upon the contract by the parties, and their practical location of the boundary, is to be considered. ( *Yocco* v. *Conroy*, 104 Cal. 468, 38 Pac. 107; 2 Cyclopedia of Evidence, pp. 715, 716, 859; Devlin on Deeds, secs. 851, 1042.) The construction must be against making gap in a boundary not likely to have been contemplated by the parties. (*Piercy* v. *Crandall*, 34 Cal. 334; 4 Am. & Eng. Ency. of Law, pp. 783-785.)

Richards & Carrier, for Mercantile Trust Company, Respondent.

The strip in controversy passed by the deed, according to the intention of the parties. (Civ. Code, sec. 1636; *Kimball*

v. *Semple,* 25 Cal. 440, 447.) The intention should not be
inferred to leave out the strip in controversy. (*Piercy* v.
*Crandall,* 34 Cal. 334; *Mendenhall* v. *Paris,* 84 Cal. 193, 23
Pac. 1095.) The closing line must run from corner to corner.
(*Glass* v. *Gilbert,* 58 Pa. St. 266, 293.) A boundary line is
"an artificial object," to be ascertained from actual monu-
ments, notwithstanding a confliction in map or plat. (*Steu-
soff* v. *Jackson,* (Tex. Civ. App.) 89 S. W. 445, 463; *Um-
barger* v. *Chaboya,* 49 Cal. 525, 538; *Vance* v. *Ford,* 24 Cal.
435; *Serrano* v. *Rawson,* 47 Cal. 52; *Perry* v. *Richards,* 52
Cal. 675; *Wheeler* v. *Benjamin,* 136 Cal. 51, 68 Pac. 313;
*Whiting* v. *Gardner,* 80 Cal. 78, 22 Pac. 71; *Burk* v. *McCowen,*
115 Cal. 481, 47 Pac. 367; *Esmond* v. *Tarbox,* 7 Greenl. (Me.)
61, 20 Am. Dec. 346.) Where there are inconsistent descrip-
tions in a deed it must be construed in favor of the grantee.
(Civ. Code, sec. 1069; *Vance* v. *Ford,* 24 Cal. 446; *Piper* v.
*True,* 36 Cal. 617; *Freeman* v. *Bellegarde,* 108 Cal. 184, 49
Am. St. Rep. 476, 41 Pac. 279.)

BEATTY, C. J.—This is an action to quiet title, the com-
plaint containing the usual allegations of ownership by
plaintiffs and of assertion by defendants of an invalid adverse
claim of an estate and interest in the demanded premises.
The land in dispute is a portion of the Los Alamos Rancho
in Santa Barbara County, which was patented by the United
States in September, 1872 to Jose Antonio de la Guerra
—the Mexican grantee—in conformity to the plat and field-
notes of a survey made by a United States surveyor in 1860.
The plaintiffs deraign title by devise and mesne conveyances
from the devisee of De la Guerra. The defendants, at the
commencement of the action, were in possession of the land,
claiming under mesne conveyances from Jose Antonio Feliz,
to whom De la Guerra made a conveyance by bargain and
sale deed in August, 1867, of a portion of the grant as sur-
veyed in 1860, and afterwards patented. If this deed de-
scribed the disputed tract, it belongs to the defendants. The
superior court found in favor of the defendants upon this
point, and also sustained their pleas of laches, and title by
prescription. From the judgment entered upon these find-
ings, and from an order denying their motion for a new
trial, the plaintiffs have appealed.

In view of our conclusion that the trial judge correctly construed the deed from De la Guerra to Feliz, as including in its description the tract in dispute, we shall not have occasion here to consider the elaborate argument of counsel upon the question of laches and limitations.

Los Alamos was a grant of eleven leagues, containing, according to the field-notes and plat of the patent survey, 48,803 acres. It was laid off in the general form of a pentagon with a southern side, bounded by a line approximately east and west, and with the apex of the opposite salient angle pointing to the north. Three of its five sides (the south, the west, and the northwest), were defined by straight lines, the other two by broken lines. The initial point of the survey was at the southeast corner, and the first course was north 2½ degrees east, 231.38 chains. The station at the end of each course was marked by a post, and the posts were lettered and numbered consecutively A. 1, A. 2, A. 3, and so on to the point of beginning. The post at the northern apex was marked A. 15 (Alamos 15) and the straight line connecting that station with post A. 16 at the northern end of the west side of the grant constituted, and has always constituted, the northwestern boundary of the rancho. But there was a mistake in the field-notes and plat of the survey as returned and approved in 1860 as to the length and true course of this northwestern boundary, and to that mistake all the uncertainty in the deed from De la Guerra to Feliz is due. The course given in the field-notes and marked on the plat of the patent survey is south 50¾ degrees west, whereas it is in fact south 55 degrees 51 minutes west, and the real distance is 387 chains instead of 380.15 chains, as stated in the field-notes. The field-notes nevertheless do correctly place the posts, A. 15 and A. 16, as they were set and as they have since remained, so that there has never been any real uncertainty as to the true location of the northwestern boundary of the rancho.

The land in controversy is an elongated triangle containing four hundred and forty-six acres, having its apex at post A. 15 and lying between the true northwestern boundary of the rancho and the mistaken course (south 50¾ degrees west) given in the field-notes of the line from post A. 15 to post A. 16. The grounds of the controversy arise out of

the terms employed in the deed from De la Guerra to Feliz
to describe the tract conveyed, which, while they call for
the western (meaning the northwestern) boundary of the
rancho as the northwestern boundary of said tract, give a
course to that boundary, and a length to the southern
boundary which leave out the tract in controversy, and
include the exact number of acres (two thousand nine hun-
dred and forty-five) mentioned in the deed, which is less by
four hundred and forty-six acres than the quantity included
if we disregard the calls for courses, distances, and quantity,
in favor of the call for the western boundary of the rancho.
This was done by the superior court in construing the deed,
and this is the error alleged by the plaintiffs in support of
their appeal.

We do not think that the superior court erred in its con-
struction of the deed. We are convinced to begin with,
aside from any considerations based upon technical rules of
construction, that the real intention of both grantor and
grantee was that the northwestern boundary of the rancho
should be the northwestern boundary of the tract con-
veyed; or, in other words, that the grantor had no intention
of reserving to himself a narrow strip of worthless land in
the shape of the outline of a church spire between the land
conveyed to Feliz on one side, and government land on the
other. The circumstances of the transaction and the situa-
tion of the parties afford a perfect explanation of the em-
ployment in the deed of terms of description, which, if
literally followed, would defeat their real intention. The
description contained in the deed was based upon a so-called
survey of the tract to be conveyed made by the county
surveyor of Santa Barbara for the grantee, Feliz, which
was one of a series of similar surveys made and recorded in
the surveyor's office by which the northern and eastern por-
tion of the Los Alamos Rancho was subdivided for the same
purpose, it may be presumed, as that disclosed in the present
instance—for the purpose, that is to say, of furnishing a
convenient description of the tracts to be conveyed. They
were, in fact, not surveys at all, but mere subdivisions
marked by lines drawn to scale on a plat of the rancho made
in conformity to the field-notes of the patent survey, includ-
ing the erroneous calls for course and distance of the north-

western boundary—the line from A. 15 to A. 16. They were numbered on the plat from east to west as survey No. 357-358-359 and 360, the last being the Feliz survey. To make this so-called survey, No. 360, nothing was done except by applying a scale to the plat of the rancho, to mark a point on the western boundary of survey No. 359, 135 chains south of post A. 13 of the patent survey, and to draw a line due west from this point to the straight line connecting the posts A. 15 and A. 16. The area included within these lines and the lines connecting A. 13 and A. 14, A. 14 and A. 15, and the line marking the western boundary of county survey 359 became county survey 360. The length and direction of all these lines except those extending from the initial point to the intersection of the northwestern boundary and from that point to post A. 15 were correctly given, but these two being computed upon the false datum of the course of the line A. 15-A. 16 were too short to include the land in controversy. To be specific, the length of the south line as marked on the plat was 273.72 chains to the intersection of the platted boundary; whereas the actual distance on that line to the true boundary is 321.14 chains. The length of the line from said intersection to post A. 15 is given as 301.31 chains, while from the intersection of the south line and the true boundary the distance is 330.08 chains.

With this misleading plat to guide them the deed to Feliz was drawn containing the following description: ''All that portion of the 'Rancho de los Alamos' situate in the third township of the said county of Santa Barbara, containing two thousand nine hundred and forty-five acres, embraced in county survey No. 360 made the 7th day of June, 1867, bounded and described as follows:

''Commencing at a point on the western line of county survey No. 359, and 135.00 chains south of post 'A' No. 13 of the official survey of said rancho, and running thence west (273.72 chains) two hundred and seventy-three chains, seventy-two links to station No. 2 of said county survey No. 360 on the western boundary line of said rancho; thence north 50 3-4 deg. E. along the western boundary line of said rancho 301.31 chains to the third station of said survey; thence S. 59 1-4 deg. E. along the northern boundary line of said rancho 47.00 chains to station No. 4 of said county

survey; thence south 166.60 chains to the place of be-
ginning."

(The use of the word "station" in this description is a
pure fiction.  The map shows no numbered stations.  The
third station means post A. 15, and station No. 4 means
post A. 14 of the official survey of the rancho.)

It is easy to see from the facts here stated what was the
real intention of the parties to this deed with respect to
the northwestern boundary of the tract conveyed.  De la
Guerra was intending to sell, and Feliz to buy, the triangu-
lar area lying between county survey No. 359 and the line
extending from post A. 15 to post A. 16, comprising all the
remaining portion of the rancho north of a line drawn due
west from a point 135 chains south of post A. 13.  The north-
western boundary of the rancho was a real boundary defined
by a straight line between permanent monuments standing
on the ground, the position of which both parties must be
presumed to have known.  The call in the deed for that
boundary was therefore a call for the real boundary as
defined by the terminal monuments, and the erroneous calls
for courses, distances, and quantity must give way in accord-
ance with the rule prescribed by subdivision 2 of section
2077 of the Code of Civil Procedure.

The fact that the description in the deed refers to county
survey No. 360 does not bring the case within the authority
of *Miller* v. *Grunsky,* 141 Cal. 441, [66 Pac. 858, 75 Pac. 48],
in which a call for the eastern boundary of the Orestimba
Rancho was denied controlling force in a patent issued by
.state officers for state lands.

The differences between that case and this are numerous
and material.  Aside from the rule that grants from the
state are construed most strongly against the grantee, while
as between private parties grants are construed most strong-
ly against the grantor, the facts of this case are sufficient
to distinguish it from the Miller-Grunsky case.  There the
county survey which was the sole and exclusive guide to the
state officers issuing the patent, represented the eastern
boundary of the Orestimba Rancho as ·6½ chains west of
a government subdivision, and that was the distance called
for in the patent.  The state officers, charged with the issu-
ance of the patent for the precise number of acres that had

been paid for by the purchaser, knew nothing of any monuments on the ground marking the eastern boundary of the Orestimba Rancho. They did by the calls for courses and distances inserted in the patent, describe a tract containing precisely the number of acres that Miller had paid for, and they inserted the boundary of the Orestimba Rancho only because it was one of the calls of the county survey. In fact, this call in the survey was correct at the time it was made in the field, for at that time the monuments of the first survey of the Orestimba Rancho stood 6½ chains west of the "point noted," but that survey had been set aside and a new survey approved before the issuance of the state patent to Miller—which placed the eastern boundary of the rancho at 20 chains west of the "point noted," and the attempt of the grantee was to stretch his grant over the whole 20 chains, so as to include more than three times the land originally surveyed and paid for—thereby depriving a subsequent purchaser from the state of what he had paid for.

In this case the land was not sold by the acre, or by a person who could sell in no other way, and the grantor knew the actual boundary mentioned in his deed. The circumstances of the case show that he intended to sell all the land north of the line drawn due east and west through a point 135 chains south of post A. 13 and west of survey 359. It was a lumping sale of that corner of the rancho. The area, owing to a mistake in the plat of the rancho, was computed at two thousand nine hundred and forty-five acres, instead of three thousand three hundred and ninety-one acres, but the round figure of one thousand dollars agreed upon as the purchase price shows that if acreage had anything to do with the estimate of value it was a very minor consideration. It is at least a plausible hypothesis that as the computation showed an area of about three thousand acres the price of one thousand dollars was agreed upon because the land was valued at about thirty-three and one-third cents an acre. The evidence is that the land along the northwestern boundary was mountainous, rocky, and barren—much of it unfit even for pasturage. If the mistake as to the area had not been made, the difference in the purchase price on this supposition would have been less than

two hundred dollars, reckoning the land in controversy at the average value of the whole tract.

In short, the difference between this case and the Miller-Grunsky case is this: That there the officers issuing the patent framed their description with *exclusive* reference to a map or survey which showed the number of acres paid for by the grantee, and they had no authority to convey more. The map was entirely inconsistent with a construction of the patent which would have more than trebled the quantity of land intended to be conveyed—a capital consideration in that case. The only evidence that the eastern boundary of the Orestimba Rancho was 20 chains west of the "point noted" was a map, which the state officers had never seen, and which they could not have taken as a guide if they had seen it; and, besides, the evidence *aliunde* showed that the map relied upon by Miller was based upon a new survey of a corrected boundary of the rancho, by which it was changed from the position stated in the county survey to the position claimed at the date of the patent. Here the grantor could convey any designated portion of the Alamos Rancho without regard to acreage or price. The description in his deed does, it is true, refer to a map, but that map calls as loudly for the boundary mentioned in the deed as it does for the course of that boundary, or the length of the line. The boundary was a fixed boundary defined by monuments, the position of which must have been known to the parties. The map, while inconsistent in minor particulars with the calls of the deed, is consistent with it in a more important particular, for it shows the boundary and the monuments which define it. In this particular it is corroborated by all the surrounding circumstances, while as to the courses and distances it is wholly at variance with those circumstances.

The deed and map are consistent as to a main and controlling fact within the knowledge of both parties; the inconsistency is only with respect to minor particulars as to which both parties were mistaken. The call for the boundary must therefore be held to mean the actual boundary, and to include the land in controversy.

The judgment and order of the superior court are affirmed.

Henshaw, J., Shaw, J., Angellotti, J., Lorigan, J., and Sloss, J., concurred.

Rehearing denied.